## FECHEIMER V. ROBERTSON.

Decided March 29, 1890.

*Mortgages by insolvent firm—Entire transaction—Assignment for benefit of creditors.*

The execution by an insolvent firm of three successive mortgages, making an entire transaction and intended to devote the property of the partnership to the payment of debts, but without provision, express or implied, for a trustee who should be accountable to creditors for the proceeds, does not constitute an assignment for the benefit of creditors.

APPEAL from *Lee* Circuit Court.

M. T. SANDERS, Judge.

*Cohn & Cohn* and *McCullough & McCullough* for appellants.

The three instruments constitute an assignment. 28 N. W. Rep., 380; 66 Wis., 227; 8 Iowa, 103; 52 Iowa, 518; 3 N. W. Rep., 524; 11 S. W. Rep., 962-964. The immediate delivery of possession without inventory and bond was sufficient to annul the deeds. Mansf. Dig., sec. 305; 37 Ark., 64; 24 Fed. Rep., 460; 24 Fed. Rep., 465.

The deeds were void because they provided for a disposition of the property in disregard of law. Mansf. Dig., sec. 309; 37 Ark., 151; 39 Ark., 66; 47 Ark., 367; 11 S. W. Rep., 962; 107 U. S., 361; 5 McCrary, 53.

They are also void because they provide for a return of the surplus before creditors are paid. 47 Ark., 367.

*U. M. & G. B. Rose, E. D. Robertson* and *H. N. Hut-
ton* for appellees.

Taken singly or all together, these mortgages have not a
single element that characterize a deed of assignment, except
that both instruments are usually made for the purpose of
securing the payment of debts. They are ordinary mortgages
with power of sale. They are made directly to creditors,
and there was no necessity for a bond. 62 Wis., 554; 24
Wis., 368; 8 Iowa, 103; 52 Iowa, 521; 71 Iowa, 124; 32
N. W. Rep., 240; 33 N. W. Rep., 657; 29 N. W. Rep.,
824; 69 Iowa, 605; 11 S. W. Rep., 960.

These mortgages were executed at the solicitation of
creditors, but if not, the assent of the mortgagees is presumed.
4 Ark., 360; 18 Ark., 123; 32 Ark., 405.

In Nebraska, with a statute similar to the one in Wiscon-
sin and Iowa, the Supreme Court followed the ruling made
in Iowa. 34 N. W. Rep., 353.

SANDELS, J. The three instruments executed by John-
son & Bolick are in form mortgages. The first was executed
to H. T. Simon, Gregory & Co.; half an hour later the sec-
ond to Goodbar, White & Co., and on the following day the
third to C. R. Ryan & Co. and other mercantile firms, being
all the remaining creditors of the grantors. The entire prop-
erty of the firm was conveyed. The liabilities mentioned in
the instruments exceeded the nominal value of the property.
The execution of the three was determined upon in advance
of the making of either.

The two firms first provided for were represented there
by attorney who had their demands for collection. None of
the creditors named in the third instrument were present or
represented. In examining the list of creditors the attorney
of the first two firms found that there was due Day, Horton
& Bailey $5.20, and said that he usually represented that
firm, and assumed to do so on this occasion. Upon the de-

livery of the first two instruments, the attorney took possession of the property for Simon, Gregory & Co. and Goodbar, White & Co. He proceeded to sell under direction of the instruments until he had realized enough to pay the claims of said two first creditors, when he surrendered possession of the remainder of the assets to the agent of the creditors accepting the provisions of the third deed.

Meantime, and while said attorney had possession of the property conveyed and the money derived from sales, appellants, creditors of Johnson & Bolick provided for in the third deed, sued out an attachment and garnished him. He answered denying possession of any money or property belonging to Johnson & Bolick, and on final hearing was discharged by the court.

In all the deeds, after the description of the property conveyed is given, the language employed is as follows: "Yet this sale and transfer is upon condition that whereas said firm of Johnson & Bolick is indebted to" (naming the parties and the sum due.) "Now if said firm shall pay or cause to be paid the sum of money above mentioned, then this conveyveyance to be void, otherwise to remain in full force and effect. The said grantees shall take immediate possession of said property, and for that purpose may designate an agent and shall proceed to sell the same at private sale at cost for cash for a period of two months and collect the notes and accounts and shall apply the proceeds arising from such sales and collections to the payment of their debt (or debts), after paying the necessary costs of the execution of this trust. If, at the expiration of said time, any portion of said debt shall remain unpaid, the said grantees shall sell at public auction for cash the balance of said property, or so much thereof as may be necessary for the payment of their debt, on ten days' notice in some newspaper published in Marianna, Arkansas, and the remainder of said property, or remainder of the proceeds of the sale of same, they shall turn over to the gran-

tors herein, Johnson & Bolick, after defraying all costs of executing this trust.''

In the last deed the words, ''and the remainder of said property or the remainder of the proceeds of the sale of the same, they shall turn over to the grantors herein, Johnson & Bolick, after defraying all costs of executing this trust,'' are omitted.

G. A. Bolick testified that he was one of the firm of Johnson & Bolick, that the firm was insolvent, and further stated: ''At the time of the execution of said deeds, and prior thereto, during the negotiations in ' regard to the matter, we (Johnson & Bolick) declared and expressed to the agents and attorneys of Simon, Gregory & Co., and Goodbar, White & Co., and Day, Horton & Bailey, that we desired and intended to immediately execute the second deed similar to the first, conveying to them the same property, subject to the first deed, and also to execute the third deed to all our creditors, conveying to them the same property, subject to the other two deeds, so that we could thereby close out and discontinue our said business, so as to enable us to embark in some other employment to support ourselves and families.''

The plaintiffs have appealed and insist that the transaction constituted an assignment; and that the deeds, requiring a disposition of the property different from that prescribed by the assignment statute, are void.

The case of *Richmond v. Mississippi Mills*, 52 Ark., 31, was very similar to the one at bar in many of its facts. The instruments adopted to effect the conveyance are substantially the same. The confidence of the mortgagors that no surplus would result to them in this case is apparent from the deeds, as also from the testimony. The purpose was to devote the property to the payment of debts.

This may be accomplished by either a mortgage or an assignment. The question is, have the grantors by stipulation in the deeds or by their agreements and acts impressed

the character of a trust for creditors upon this transaction?

In *Richmond v. Mississippi Mills, supra*, it is said: "A deed of assignment contemplates the intervention and agency of a trustee, though none need be named in the deed. Burrill on Assignments, sec. 3; *Burrows v. Lehndorff*, 8 Iowa, 96. Hence, conveyances directly to creditors, in payment or by way of security for their own debts solely, are not, generally, assignments for the benefit of creditors." Richmond's agreement that Taylor should assume charge for himself and twelve others not represented or consulted, and that a man suggested by Richmond should be manager for all, together with many other circumstances indicating the intention of the parties, made it clear that the transaction in that case was an assignment. In *Winner v. Hoyt*, 66 Wis., 227, the six mortgages, executed with the agreement that Hoyt should take the property and sell for the benefit of all, made the transaction an assignment. In *re Hurst*, 7 Wend., 239, the confession of judgment with the agreement that various creditors should be paid out of the sum confessed was held an assignment.

In *Dickson v. Rawson*, 5 Ohio St., 218, it was held, that, where the mortgages were to pay the debts of the grantees and to pay $500.00 to Graff as indemnity for his suretyship to Harris for the mortgagor, the instrument was an assignment. Why? Because in every case it was shown, either by stipulation in the instrument or by independent agreement at the time, that a person was contemplated and intended to be assignee or trustee, for the benefit of some or all the creditors of the grantor beside himself.

The test is this: can other creditors call the grantee, or person stipulated for by the grantor, to account for the proceeds of the property? If they can, then the conveyance is not solely for the benefit of the grantees and conveyances of this kind would constitute an assignment. If the grantees, or

the parties to whom by arrangement with the grantors the property is given, are not liable to account to other creditors for the proceeds of sales, then there is no trustee and no assignment.

In *Richmond v. Mississippi Mills*, *supra*, it is further said: "We do not hold that the giving of one or more mortgages, the confession of judgments or other means adopted to give security or preference constitute necessarily or even ordinarily an assignment. But we do hold that where one or more instruments are executed by a debtor, in whatsoever form or by whatsoever name, with the intention of having them operate as an assignment, and with the intention of granting the property conveyed absolutely *to the trustee* to raise a fund to pay debts, the transaction constitutes an assignment." And further in the same case: "There was ample evidence to establish the fact that it was the intention of the parties that the various instruments should operate as an absolute conveyance of the property to raise a fund to pay debts; *and that Taylor, either personally or by Wiley Hatley, should be the trustee for the execution of the trust.* The orders drawn on Geo. Taylor & Co. ignored the other mortgagees. It was to the trustee that they were directed."

In this cause there was no agreement or arrangement, express or implied, for a trustee. The two first creditors were present by their attorney and a delivery to him was a delivery to them.

They were not accountable to any other creditor under the terms of the deed or agreement of the parties for any part of the money received from sales of property. When they received enough to satisfy their claims, they delivered all remaining property to the creditors named in the third deed, and they in turn represent all the indebtedness of Johnson & Bolick and are not answerable to any one for the proceeds of sales, except the mortgagors.

Affirm.