SMEAD v. CHANDLER.

Opinion delivered June 6, 1903.

1. CONFLICT OF LAWS—WHEN LAW OF FORUM GOVERNS.—Where the owner of personal property executes a mortgage in one state, according to its laws, of such property situated in another state, and the mortgagee attempts in the latter state to enforce the mortgage against third parties there domiciled, in case of conflict between the law of the forum and the law of the place of contract, the former will govern. (Page 510.)

2. MISSOURI LAW AS TO INSOLVENCY—PREFERENCE.—Under the laws of Missouri, an insolvent corporation may, in the absence of fraud or statutory restriction, prefer a *bona fide* creditor by a deed of trust of its property, and the execution of a general assignment

of the same property immediately thereafter will not invalidate the preference.  (Page 514.)

3.  CONFLICT OF LAWS—LAW OF PLACE OF CONTRACT.—A deed of trust executed in Missouri by a corporation of that State to secure a debt, and an assignment of the same property subsequently executed there by it for the benefit of its creditors, are governed by the laws of Missouri as to their nature, character and interpretation.  (Page 513.)

4.  SAME—SITUS OF DEBT.—The actual situs of a debt is the place where its payment may be enforced by legal process.  (Page 515.)

5.  CONVEYANCE—MORTGAGE.—A deed of trust executed for the purpose of securing a debt, to be void upon payment of the debt, is a mortgage, within the meaning of the statute which makes a mortgage a lien on the property from the time it is filed for record, and not before.  Cross v. Fombey, 54 Ark. 179, followed.  (Page 516.)

6.  MORTGAGE—NON-RESIDENT MORTGAGOR.—Sand. & H. Dig., § 5090, providing that if a mortgagor is a non-resident, "the mortgage shall be recorded in the county in which the property is situated at the time the mortgage is executed," applies to personal property of every description, including choses in action, such as accounts, and requires that a mortgage executed by a non-resident, which includes an account due from a resident, should be recorded in the county where the debtor resides, in order to constitute a lien thereon.  (Page 516.)

Appeal from Columbia Circuit Court.

CHARLES W. SMITH, Judge.

*Smead & Powell,* for appellants.

A contract, good in the state or county of its inception, is so in every other.  Bish. Cont. §§ 1370-73; Clark, Cont., 502; Lawson, Cont., § 347; Jones, Chat. Mort., 299; Cobb, Chat. Mort., § 475; 91 U. S. 406.  Such is the doctrine in this state.  6 Ark. 142; 7 Ark. 231; 9 Ark. 233; 14 Ark. 189; 22 Ark. 125; 25 Ark. 261; 28 Ark. 351; 31 Ark. 32; 33 Ark. 645; 35 Ark. 52; 36 Ark. 569; 26 Ark. 356; 40 Ark. 423; 44 Ark. 213; 46 Ark. 66; 44 Ark. 230; 60 Ark. 269; 61 Ark. 329; 61 Ark. 6; 114 Mo. 529; 133 Mo. 481; 133 U. S. 134.  No instrument can be construed as a general assignment unless the grantor intended to operate as such.  64 Mo. App. 131; 68 Mo. 290; 120 Mo. 317.  A conveyance by an insolvent debtor which subjects his property to the payment of an honest debt is not fraudulent as to other creditors.  152 Mo. 350; 138 Mo. 576;

149 Mo. 538; 152 Mo. 606; 140 Mo. 615; 79 Mo. App. 39; 74 Mo. App. 651; 77 Mo. App. 415; 130 Mo. 119; 37 Mo. App. 272. A contract to be unenforcible here must be repugnant to our laws and contrary to common principles of justice and morality. Laws. Cont. § 347; Bish., Con., 1377-83; Jones, Chatt. Mortg., § 299.

*J. M. Barker, Gaughan & Sifford,* for appellees.

The lien of a garnishment dates from service of the writ. 39 Ark. 97; 40 Ark. 537; Sand. & H. Dig. § 5091. This state will not give effect to the deed of trust as against citizens of our state. 2 Kent, 580; 5 Wall. 307; Story, Confl. L., § 390; 37 N. J. L. 23; 14 Bush, 214; 33 S. W. 11, 484; 22 Pac. 517; 13 N. J. L. 326; 31 *Ib.* 90; 45 Mo. 474; 35 Ga. 176; 56 N. E. 773; 58 Fed. 799; 56 Fed. 602; 50 Fed. 561; 57 Fed. 403; 29 Fed. 395; 82 Fed. 471; 94 Fed. 885; 56 Fed. 124; 111 Fed. 415; 70 N. W. 508; 129 U. S. 397; 125 Mass. 374; 112 N. C. 188; 124 Mo. 178; 149 Atl. 544; 50 N. E. 998; 23 Ark. 525; Story, Confl. L., 327; 6 Mass. 358; 54 N. E. 302; 142 Mass. 53; 50 N. H. 253; 63 N. H. 514; 18 S. E. 765; 43 Neb. 876; 62 N. W. 257; Dicey, Confl. L., 558; 2 Mason, 15; 12 Barb., 302; 42 Miss., 144; 8 Mart., 95; 19 N. J. 462; 5 La. Ann., 269; 13 La. Ann., 117; 14 La. Ann., 52; 1 Tex. 203; 13 Pet. 65; 21 Vt. 189; 42 Mo. 174; 18 La. Ann., 10; 9 Fla. 96; 3 Jones (Eq.), 294; 7 Gill, 378; 4 Ky. 730. Courts of a state will not enforce a contract which violates its positive legislation. 42 Mass. 444; 2 How. 837; 4 Atl. 365; 21 Fed.; 142 Mass. 53; 62 N. W. 283; 50 Ill. 370; 35 Ga. 176; 7 Gray, 473; 53 Ala. 411; 37 U. S. 247; 45 U. S. 834; 21 S. W. 747.

*Smead & Powell,* in reply for appellants.

The legislature has power to place limitations upon the disposition of property in its borders, but it will not exercise this function and declare the law arbitrarily. 8 Wall., 168; 10 Wall., 166; 93 U. S. 664; 5 Wall., 307. Domestic and foreign corporations are not in the same attitude. 94 N. Y. 168; 136 N. Y. 347. The deed of trust was not fraudulent. 68 Ga. 96; 12 Md. 54; 76 Am. D., 607; 76 Va. 497; 55 How. Pr., 373; 66 Tex. 372; 17 Pa. 91; 1 Bail. 193; 2 Bail., 163; 24 N. J. L. 162; 2 Wall., Jr., 131; 44 U. S. 483; 43 Fed. 716; 150 Pa. 413; 82 Ga. 142. The situs of a debt is the domicil of the creditor. Story, Confl. L., 559; Burr., Assn., 471; 68 Ga. 96; 53 Conn. 390; 35 N. Y. 657; 10 Abb. (N. C.), 346; 61 N. Y. 524; 89 N. Y. 508; 33 N. Y. 224; 19 N. J. Eq.

462; 42 Fed. 716. A conveyance made in another state will be upheld, if it has been executed by a transfer of possession. 13 Cal. 242; 54 N. Y. 29; 81 Wis. 291; 147 U. S. 473; 13 N. J. L. 325; 4 La. Ann. 351; 18 Pa. 185; 7 R. I. 58; 58 Fed. 672; 28 Conn. 33; 7 Allen, 395; 22 Pick., 245; 71 Am. D., 689.

BATTLE, J. The subject-matter of this litigation is a fund in court. It is claimed by D. W. Chandler & Co. under a writ of garnishment, and by Frank E. Gates, as trustee, under a deed of trust.

The Creel Lumber Company was a corporation organized under the laws of Missouri, and operated a sawmill at Milner, in the county of Columbia, in this state. The J. F. Crawford Lumber Company was also a Missouri corporation, and was principally engaged in selling the output of the mill at Milner, for which it was to receive sixty-five cents per thousand feet.

On the first day of July, 1897, in the state of Missouri, the J. F. Crawford Lumber Company, by a deed of trust, conveyed to Frank Gates, as trustee, all of its property, both real and personal, including an account owed it by the Creel Lumber Company, for the purpose of securing certain creditors named therein. Among these creditors was George P. Gates, of Missouri, to whom it was indebted in a large amount. The deed of trust was delivered to the trustee in the evening of the day of its execution, accepted by him, and by him, on the following day, filed for record in the county of the home office of the company, and by him afterwards filed in the various counties of the state of Missouri, where the real estate of the company was situated. On July 17th, it was filed in the recorder's office of Columbia county, Arkansas.

After the execution and delivery of the deed of trust to Frank E. Gates, as trustee, the said J. F. Crawford Lumber Company, on the 2d day of July, 1897, in the state of Missouri, by deed of assignment, conveyed all of its property to William E. Hill, assignee, for the benefit of its creditors.

A short time prior to the 1st day of July, 1897, the J. F. Crawford Lumber Company placed in the hands of Smead & Powell, attorneys, at Camden, Ark., for collection, the account against the Creel Lumber Company, in the sum of $25,297.03. And on July 2d, 1897, said attorneys filed a bill in chancery in the Columbia circuit court, asking that a receiver be appointed to take charge of the assets of the Creel Lumber Company. The prayer

was granted, and John G. Wepfer was duly appointed receiver by the court. This case remained on the docket, as originally commenced, in the name of the J. F. Crawford Lumber Company, though both Smead & Powell and John G. Wepfer, as receiver of the Creel Lumber Company, were notified by Frank E. Gates, immediately after the deed of trust was executed to him, as trustee, by the J. F. Crawford Lumber Company, that he held said indebtedness as such trustee, and it was so understood by Smead & Powell.

Three days after the appointment of John G. Wepfer as receiver of Creel Lumber Company, on the 5th day of July, 1897, D. W. Chandler & Company commenced an action against the J. F. Crawford Lumber Company, in the Columbia circuit court for the sum of $2,338.34, and on the 9th day of said month a summons was issued therein. The indebtedness upon which this action was brought was in the nature of acceptances by the Creel Lumber Company indorsed by the J. F. Crawford Lumber Company. This claim was also filed by the receiver of the Creel Lumber Company, and was credited with its *pro rata* of the proceeds arising from the sale of the Creel Lumber Company property by the receiver, under order of the court. The balance due, after this credit, reduced the amount to $1,496.27, for which the plaintiffs obtained judgment against the J. F. Crawford Lumber Company.

At the institution of the action of D. W. Chandler & Co. against the J. F. Crawford Lumber Company, the plaintiff caused an order of attachment to issue, which was returned without being served. A writ of garnishment was at the same time issued, and was served, on the 16th of July, 1897, upon John G. Wepfer, as receiver, and Smead & Powell, as attorneys for the J. F. Crawford Lumber Company.

In the suit of the J. F. Crawford Lumber Company against the Creel Lumber Company a decree was rendered in favor of the plaintiff and intervening creditors, and a distribution of the proceeds of the sale of the property of the defendant was ordered by the court to be made by the receiver. A judgment was rendered in favor of the plaintiff for $23,000, and a distributive share of about $7,000 was awarded thereon, and paid to Smead & Powell, by agreement, to hold subject to the order of the court in the action of D. W. Chandler & Co. against the J. F. Crawford Lumber Company.

Afterwards Smead & Powell, garnishees in the action of D. W. Chandler & Co. against J. F. Crawford Lumber Company, answered, and alleged that they held no funds of the defendant, and that the moneys held by them were the property of Frank E. Gates, as trustee, and were so held by them. Gates, as such trustee, filed his complaint, and claimed the funds in the hands of the garnishees, Smead & Powell, by virtue of the deed of trust executed to him as before stated.

The deed of trust and assignment executed by the J. F. Crawford Lumber Company, the statutes, and reports of the opinions of the supreme court of the state of Missouri upon the subject of mortgages and assignments for the benefit of creditors, an agreed statement of facts, and depositions of witnesses, were read as evidence in the trial to the court sitting as a jury; and the foregoing facts appeared, and it was shown that the trustee, Gates, converted the assets in his hands, except property of the value of $2,000, into money, and paid about thirty-five per cent. of the indebtedness secured by the deed of trust, leaving in his hands about $1,200 in money to pay costs, expenses and fees, and the $7,000 paid on the judgment against the Creel Lumber Company, and that the balance of such indebtedness still due is about $37,000.

The court sustained the attachment, rendered judgment in favor of plaintiffs for the $1,496.27, and ordered Smead & Powell to pay the same, if the judgment shall not be reversed by this court; and the garnishees, Smead & Powell, and Gates, as trustee, appealed.

By the laws of what state are the rights of the parties in the case determined?

Every state has jurisdiction over all property, personal and real, within its territorial limits, and, within the bounds of legislation, may regulate and control it in such manner as to it may seem fit or expedient. It may provide how far the laws of a foreign state, in which a contract or transfer or mortgage of property has been made, shall govern in the enforcement of such contract, transfer, or mortgage by its courts, or that its own laws shall be the only rule observed in such cases. But when it has not done so the general rule is "that the nature, the obligation and the interpretation of personal contracts and contracts concerning movable property are governed, in such a state, by the laws of the place where they are made, unless the parties at the time of making them have some othr law in view." *Liverpool Steam Co.* v. *Phoenix Ins. Co.,* 129 U. S. 458. Such law governs in such cases, not because it has any

extraterritorial force, but by permission, upon a principle of justice and comity. But this rule has its exceptions. There are five instances in which the state of the forum will not enforce the foreign law: "(1) Where the enforcement of the foreign law would contravene some established and important policy of the state of the forum; (2) where the enforcement of such foreign law would involve injustice and injury to the people of the forum; (3) where such enforcement would contravene the canons of morality established by civilized society; (4) where the foreign law is penal in its nature; and (5) where the question relates to real property." Minor, Conflict of Laws, §§ 5, 13.

It follows, then, that where the owner undertakes in one state, according to its laws, to mortgage personal property in another state, and the mortgagee attempts to enforce the mortgage in the actual situs of the property against third parties domiciled there, the laws of which situs conflict with the *lex loci contractus,* the law of the forum will govern. The reason of this rule is, the state of the forum, as before stated, has the right to regulate the transfer of property in its bounds for the purpose of protecting its citizens, and to enforce the laws enacted for the purpose in such cases. As a general rule, no injustice can be done to the parties by requiring them to conform to such laws. On the contrary, citizens of the situs of the property might be greatly injured if it was not made their duty to do so. They have no just cause of complaint. In sending their property into a state, they impliedly submit to the regulations concerning its transfer in force there, although a different rule of transfer prevails in the jurisdiction where they reside. The observance of comity towards other states to the unjust injury of citizens of the forum can not be reasonably expected or required. What we have said in this connection applies only when the actual situs of the property and the forum are the same. *Green v. Van Buskirk,* 7 Wall. 139; *Hervey v. R. I. Locomotive Works,* 93 U. S. 664; *Warner v. Jaffray,* 96 N. Y. 248; *Denny v. Faulkner,* 23 Kan. 89, 98; Minor, Conflict of Laws, § 14.

There is usually no difficulty in ascertaining the actual situs of tangible chattels, whenever it becomes necessary to discriminate between the actual and legal situs thereof." "But with respect to intangible chattels and choses in action, such as bonds, notes, bills of exchange, accounts, and debts of all sorts," the decisions of courts present some difficulty.

The terms or phrases "choses in actions" and "debt" are used by courts to represent the same thing when viewed from opposite sides. "The chose in action is the right of the creditor to be paid, while the debt is the obligation of the debtor to pay." As said by Professor Minor: "The chose in action, or right of the creditor, is a personal right which adheres to him wherever his situs may be. It may for some purposes be his legal situs (or domicil), for others his actual situs. Just as, in the case of tangible chattels, though the title thereto follows the owner, and its transfer will be regulated by the law of the owner's situs, yet his or his transferee's ability to enforce that title may be in the exceptional cases determined by a different system of law, should the the chattels be actually situated elsewhere. So, also, in the case of debts, though the right to enforce them follows the owner (the creditor), and his transfer is therefore to be governed by the law of his situs, actual or legal, yet his or his transferee's ability to enforce that right may depend upon another jurisdiction and system of law, if he has to resort to another state to sue the debtor. In other words, though the situs of the creditor's right follows the creditor, the situs of the debtor's obligation follows the debtor, in the sense that the debtor's legal obligation exists only in the state where it can be enforced against him.

"The debtor's obligation may be enforced in a proceeding *in rem* in any state where he has property, though he be absent or a non-resident; or if in a proceeding *in personam,* the debtor must have been actually found within the court's jurisdiction and process served upon him there, or else he must have voluntarily appeared. It is not essential that the debtor's obligation should be enforced where he resides, though that will ordinarily be the place of its enforcement.

"It will be seen, therefore, that, while the situs of the creditor's right (chose in action) follows the creditor, and corresponds to the legal situs of tangible chattels, the situs of the debtor's obligation follows the actual situs of the debtor, or of his property (in case of a proceeding *in rem* to enforce it), and corresponds to the *actual* situs of tangible chattels.

*   *   * "The analogy between the situs of tangible chattels and the situs of debts is complete at every point. The legal situs of a debt, as in case of chattels, is the *actual* or *legal* situs of the owner (the creditor) according as the particular transaction in question involves the creditor's *voluntary* or *involuntary* participation therein. The *actual* situs of the debt at a particular moment

is the place where payment thereof may at that moment be enforced, whether by proceeding *in rem* or by proceeding *in personam*. If the former proceeding is used, the actual situs of the debt will be the actual situs of the *res* subjected to its payment; if the latter, it will be the domicil of the debtor or some other state, according as he is sued in his own state or in the courts of another which have acquired jurisdiction over him by due process of law." Minor on Conflict of Laws, § 121; Waples, Debtor and Creditor, §§ 41, 46, 67, 72, 80, 81, 83, 89, 148, 278, 31, 180.

We now apply the law as hereinbefore stated to the facts in this case. The deeds of trust and assignment were executed in the state of Missouri. The J. F. Crawford Lumber Company, which executed both the deeds, was a corporation organized under the laws of Missouri, and had its domicil in that state. Frank E. Gates, the trustee in one of the deeds, and William E. Hill, the assignee in the other, were citizens and residents of said state. On the first day of July, 1897, the J. F. Crawford Lumber Company, while in full dominion and control of its property, conveyed the same, real and personal, to Frank E. Gates, in trust, to secure the payment of certain debts, on condition that when these debts were paid the conveyance should be void; and therein provided that the trustee should take immediate possession of all the property, and make an inventory of the personal assets, and proceed at once to collect the choses in action and judgments thereby transferred, and sell the remainder of said property, and hold the proceeds of the collections and sales until all of the debts secured should become due and payable, and then, if said debts were not paid, appropriate the same to the payment of the expenses of the trust and the debts secured, so far as the same would extend, and then pay the surplus, if any, to the J. F. Crawford Lumber Company. The majority of the debts secured became due and payable after the execution of the deed of trust; the last one falling due on the 28th day of October, 1897. Many of these debts were evidenced by promissory notes or bills of exchange, upon which one or more of the directors of the Crawford Lumber Company were, individually, indorsers or sureties.

The statute of Missouri, which was read as evidence in this case, provides: "Every voluntary assignment of lands, tenements, goods, chattels, effects and credits made by a debtor to any person in trust for his creditors shall be for the benefit of all the creditors of the assignor in proportion to their respective claims; and every provision in any assignment providing for the payment of one debt

17

or liability in preference to another shall be void, and all debts and liabilities (including judgments entered by confession thirty days previous to such assignment) shall be paid *pro rata* from the assets thereof. * * * " R. S. 1889, p. 198.

In *Jaffray* v. *Mathews,* 120 Mo. 317, 329 (the opinion of the court in which was, by agreement of parties, read as evidence in this case of the laws of Missouri), the instrument in question was in substance and form the same as the deed of trust in the case at bar, and the property thereby transferred was all the property that Mathews, who executed it, owned. The court held that "an insolvent debtor can mortgage or pledge all or any part of his property for the benefit of one or more of his creditors;" that such privilege was not abridged by the statute copied in this opinion; and that "the fact that a chattel deed of trust given to secure notes payable to part only of the grantor's creditors empowers the trustee to take possession of the property and sell it at private sale, and hold the proceeds until the maturity of all notes secured, does not change its character as a security and make it a general assignment."

In *Waggoner-Gates Milling Company* v. *Ziegler-Zais Commission Company,* 128 Mo. 473 (the opinion of the court in which was also read, by agreement of parties, as evidence of the laws of Missouri), the court held that "an insolvent corporation, having possession and control of its property, may, in the absence of fraud or statutory restriction, prefer a *bona fide* creditor by a deed of trust on its property, and that the execution of a general assignment of the same property immediately thereafter, and on the same day, will not invalidate the preference; and that *bona fide* creditors of such corporation, who are not stockholders or directors, are not precluded from taking security for their claims," although some of the directors are individually endorsers or sureties on the notes by which the same (claims) are evidenced.

The deeds of trust and assignment involved in the case at bar were unquestionably governed by the laws of Missouri as to their nature, character and interpretation. According to these laws, the former was a valid deed of trust. It was intended to be a mortgage to secure the payment of debts. The J. F. Crawford Lumber Company had, by its terms, until the 28th day of October, 1897, to redeem the property conveyed or the proceeds of the collection or sale thereof.

According to the test fixed by this court to distinguish a mortgage from an assignment for the benefit of creditors, it was a mort-

gage in this state. That test is, was it the intention of the parties, at the time the instrument was executed, to divest the debtor of the title, and so make an appropriation of the property affected to the raising of a fund to pay debts? If it was not, it is not an assignment, but a mortgage, if its object was to secure the payment of debts, as in this case. *Robson* v. *Tomlinson,* 54 Ark. 229; *Richmond* v. *Miss. Mills,* 52 Ark. 30; *Fecheimer* v. *Robertson,* 53 Ark. 101; *Box* v. *Goodbar,* 54 Ark. 6; *Penzel Company* v. *Jett, Id.* 428; *Wood* v. *Adler-Goldman Com. Co.,* 59 *Id.* 270; *Marquese* v. *Felsenthal,* 58 *Id.,* 293; *Smith* v. *Empire Lumber Co.,* 57 *Id.* 222; *Adler-Goldman Com. Co.* v. *Phillips,* 63 *Id.* 40.

But it is contended by appellees that the act of the General Assembly of this state, entitled "An act to prevent preference among the creditors of insolvent corporations," approved April 14, 1893, provides that no preferences shall be allowed among creditors of insolvent corporations, except for the wages of laborers and employees; and that therefore the deed of trust executed by the Crawford Lumber Company can not be enforced by the courts of Arkansas against its citizens. But such preferences are not void, according to the act, and could not "be set aside unless complaint thereof be made within ninety days after the same is given or sought to be obtained." The act provides that "every preference obtained or sought to be obtained by any creditor of such corporation, whether by attachments, confession of judgment or otherwise, and every preference sought to be given by such corporation to any of its creditors, in contemplation of insolvency, shall be set aside by the chancery court, and such creditor shall be required to relinquish his preference and accept his *pro rata* share in the distribution of the assets of such corporation." But can this be done in any manner except by proceedings instituted by a creditor or stockholder in a chancery court "for the winding up of the affairs of the corporation?" Does the act apply to foreign corporations? See *Vanderpool* v. *Gorman,* 140 N. Y. 563. But the decision of these questions is not necessary in this case.

As before stated, a part of the property mortgaged by the deed of trust was a debt of the Creel Lumber Company. That debt was garnished by appellees, and was afterwards converted into money, which is now held subject to the order of the court in this action, and is the subject-matter in controversy.

The actual situs of the debt was Columbia county, in this state. For the debtor did business in that county, and, under the

laws of this state, could be sued and garnished there. Was it (the debt) subject to control of the laws regulating mortgages in this state? It was, if such laws apply to mortgages of choses in action. *Warner* v. *Jaffray,* 96 N. Y. 248; *Denny* v. *Faulkner,* 22 Kan. 89, 98.

For the protection of creditors and subsequent purchasers the statutes of this state provide: "Section 5090. All mortgages, whether for real or personal estate, shall be proven and acknowledged in the same manner that deeds for the conveyance of real estate are now required by law to be proven or acknowledged; and so proven or acknowledged shall be recorded, if for lands, in the county or counties in which the land lie, and if for personal property, in the county in which the mortgagor resides. Provided, if the mortgagor is a non-resident of this state, the mortgage shall be recorded in the county in which the property is situated at the time the mortgage is executed. Sec. 5091. Every mortgage, whether for real or personal property, shall be a lien on the mortgaged property from the time the same is filed in the recorder's office for record, and not before; which filing shall be notice to all persons of the existence of such mortgage." Sand. & H. Dig., §§ 5090, 5091.

The deed of trust in question is a mortgage, within the meaning of these statutes. *Cross* v. *Fombey,* 54 Ark. 179. Do they apply to choses in action?

Decisions of similar questions by courts of other states, as a rule, rest upon the words of their statutes. As proof of this fact, we cite a few cases. A statute of Michigan provided that "every mortgage, or conveyance intended to operate as a mortgage, of goods and chattels * * * which shall not be accompanied by an immediate delivery, and followed by an actual and continued change of possession, of the thing mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers or mortgagees in good faith, unless the mortgage, or a true copy thereof," shall be filed for record. In *Preston National Bank* v. *Purifier Co.,* 84 Mich. 364, 388, the court held that this statute applied only to goods and chattels which are capable of delivery, and not to accounts; that an account was not capable of delivery.

The New York Court of Appeals, in *Booth* v. *Kehoe,* 71 N. Y. 341, held that a similar statute related "to goods and chattels which can be removed from one place to another, and the possession thereof changed, and not to chattels real, or a chose in action."

Section 5 of chapter 74 of the Revised Statutes of Massachusetts is as follows: "No mortgage of personal property, hereafter made, shall be valid against any other person than the parties thereto, unless possession of the mortgaged property be delivered to, and retained by, the mortgagee, or unless the mortgage be recorded by the clerk of the town where the mortgagor resides." In construing this statute in *Marsh v. Woodbury*, 1 Metc. 436, the court said: "The court are of the opinion that the language of the statute, taken with the context and subject-matter, applies only to goods and chattels capable of delivery; and not to the defeasible or conditional assignment of a chose in action."

The courts of other states have held that similar statutes did not apply to choses in action, holding that the words of such statutes excluded them from their operation. *Williamson* v. *Railroad Co.*, 26 N. J. Eq. 398; *Monroe* v. *Hamilton*, 60 Ala. 226, 233; *Bank of U. S.* v. *Huth*, 4 B. Mon. 423, 448; *Kirkland* v. *Brune*, 31 Gratt. 126, 127; *Tingle* v. *Fisher*, 20 W. Va. 497.

Section 5090 of the statutes of this state was enacted without the proviso which now appears as a part of it. There were no words in it or any other section which limited its application to any particular personal property. The words used apply to and include all personal property of every description, including choses in action, such as accounts. After this court held, in *Watson* v. *Thompson Lumber Co.*, 49 Ark. 83, that there was no authority for filing or recording a mortgage that was executed by a non-resident of this state, the proviso was added, presumably, for the sole purpose of authorizing such mortgage to be recorded and fixing the place of record.

In construing section 5090 and the section following, this court has repeatedly and uniformly held that "a mortgage is good between the parties thereto, though not acknowledged and recorded, but constitutes no lien upon the mortgaged property as against strangers, even though they may have actual notice of its existence." *Main* v. *Alexander*, 9 Ark. 112; *Jacoway* v. *Gault*, 20 Ark. 190; *Hannah* v. *Carrington*, 18 Ark. 105; *Watson* v. *Thompson Lumber Co.*, 49 Ark. 83; *Ringo* v. *Wing*, 49 Ark. 457. According to this construction, the filing for record is a prerequisite to the creation of a lien on any property by mortgage as against third parties.

The debt in controversy in this action was an account of the Creel Lumber Company with the Crawford Lumber Company. It

had been delivered to Smead & Powell, attorneys, for collection. They instituted suit for that purpose. After the deed of trust was executed, the parties to the suit were not changed. It was never reduced to possession by the trustee, and the deed of trust was not filed for record until after the garnishment of the debt. The result is, the lien of the appellees is prior and superior to that acquired by the deed of trust; the law of the forum and the situs of the debt governing. *Warner* v. *Jaffray,* 96 N. Y. 248, 254, 257; *Denny* v. *Faulkner,* 22 Kan. 98.

Judgment affirmed.