In re BSC AUDIO, INC., Debtor.

Charles Darwin DAVIDSON, Trustee,
Plaintiff/Appellee,

v.

INSURANCE COMPANY OF NORTH
AMERICA, Defendant/Appellant.

Civ. No. 82–5178.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

April 11, 1983.

Charles Phillip Boyd, Jr., Davidson Law Firm, P.A., Little Rock, Ark., for Charles Darwin Davidson, trustee.

Tod C. Bassett, Bassett, Bassett & Bassett, Fayetteville, Ark., for Insurance Co. of North America.

John A. Lewis, Warner & Smith, Fort Smith, Ark., for BSC Audio, Inc., debtor.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

### I. *Introduction*

BSC Audio, Inc., is a bankrupt retailer of audio equipment in Fayetteville, Arkansas. The Trustee in Bankruptcy, Charles Darwin Davidson, filed a complaint at law on a contract in Bankruptcy Court to recover the proceeds of an insurance policy issued by the Insurance Company of North America to BSC Audio, Inc. As the bankruptcy proceeding was commenced prior to October 1, 1979, the Bankruptcy Reform Act of 1978 does not apply, but rather, the substantive and procedural rights governing this cause arise under the Bankruptcy Act of 1898, as amended.[1]

Before answering the complaint, appellant-insurer filed a motion to dismiss or transfer to the United States District Court on the basis that the Bankruptcy Court lacked subject-matter jurisdiction over such cases under the 1898 Act, since the case involved only questions of insurance law to be tried by a jury, with no issues of bankruptcy law presented. The Bankruptcy Judge[2] denied the motion to dismiss, holding that such cases fall within its summary jurisdiction conferred by the 1898 Act.

Following the denial of its motion, the insurer answered the complaint setting up three policy exclusions as affirmative defenses.

The case was then tried to a jury in bankruptcy court. The jury returned a verdict against the insurance company.

The insurer appeals the judgment entered on the verdict, raising three main arguments: (1) that the Bankruptcy Court erred in denying the insurer's motion to dismiss on jurisdictional grounds; (2) that the jury was incorrectly instructed; (3) that the Bankruptcy Court correctly found respondent trustee not entitled to pre-judgment interest.

Because of our resolution of the first issue, we need not reach the other two, for the reasons set forth herein.

### II. *Discussion*

The jurisdiction of the district courts and the bankruptcy courts under the Bankruptcy Act of 1898 is set forth in Section 23 of the Act, formerly codified as 11 U.S.C. § 46:

§ 23. *Jurisdiction of United States and State Courts.* (a) The United States District Courts shall have jurisdiction of all

---

1. Because of the savings provision of the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, Title 4, § 403(a), 92 Stat. 2683 (Nov. 6, 1978), this action is governed by the 1898 Act.

2. The Honorable Charles Baker, United States Bankruptcy Judge. For purposes of clarity, the term "referee" is used to refer to bankruptcy judges under the 1898 Act, although the bankruptcy referees were redesignated as "judges" in 1973. Bankr.Rule 901(7).

controversies at law and in equity, as distinguished from proceedings under this title, between receivers and trustees as such and adverse claimants concerning the property acquired or claimed by the receivers or trustees, in the same manner and to the same extent as though such proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants.

(b) Suits by the receiver and the trustee shall be brought or prosecuted only in the courts where the bankrupt might have brought or prosecuted them if proceedings under this title had not been instituted, unless by consent of the defendant, except as provided in sections 96, 107 and 110 of this title.

Under the language of this statute, the Bankruptcy Court has no jurisdiction over a case at law involving a trustee's claim to or acquisition of property from an adverse party, as distinguished from a case arising solely under rights created by Title 11, without the consent of the adverse party.

Nonetheless, it was well settled that bankruptcy courts have "summary" jurisdiction to adjudicate controversies relating to property over which they have actual or constructive "possession"; and the test of this jurisdiction is possession by the bankrupt at the time of the filing of the petition. *South Central Bell Telephone Co. v. Simon,* 508 F.2d 1056 (5th Cir.1975).

There has long been a distinction between the "summary" jurisdiction of the bankruptcy court and the bankruptcy referee over "proceedings in bankruptcy," and the "plenary" jurisdiction of the United States District Courts over "independent suits." *Morrison v. Rocco Ferrera & Co.,* 554 F.2d 290 (6th Cir.1977).

■ Where an action is within the "summary" jurisdiction of the bankruptcy court, the action can be referred to the bankruptcy referee for adjudication. *Morrison, supra;* 2A *Collier* ¶ 38.09[2] (14th ed.). Where, however, an independent or plenary action must be maintained, reference of such an action to the bankruptcy judge "raises substantial jurisdictional problems."

*Morrison, supra,* at 296; 2 *Collier* ¶ 23.15[7] (14th ed.).

Therefore, the Trustee quite naturally asserts that the claim against appellants falls within the "summary" jurisdiction of the bankruptcy court. However, to sustain this thesis, the Trustee must show that the bankrupt was in actual or constructive possession of the "property" at issue, at the time of the filing of the petition. As, obviously, the bankrupt was not in possession of the insurance proceeds at the time the petition was filed, the Trustee contends that nonetheless the bankrupt was in "possession" of the "property" because the bankrupt "possessed" a chose in action, *i.e.,* the bankrupt's "right to pursue his contractual rights."

The Trustee argues that the substantiality of such a claim is irrelevant, the issue being solely that of "possession."

A "chose in action" is synonymous with a "debt." The terms or phrases, "chose in action" and "debt," are used by courts to represent the same thing when viewed from opposite sides. The chose in action is the right of the creditor to be paid, while the debt is the obligation of the debtor to pay. *Smead v. Chandler,* 71 Ark. 505, 76 S.W. 1066 (1903).

The Court in *Morrison,* in discussing the summary jurisdictional aspects of litigating adverse claims with respect to choses in action, declared:

The question, thus, is why a court in bankruptcy may not enforce a chose in action against the obligor thereon where such is within the court's constructive possession. The answer traditionally given is that the procedure in bankruptcy is primarily summary, as opposed to an adversary procedure, in that it requires a plenary action with adversarial procedures to enforce a chose in action ... *This distinction between property claims which may be enforced summarily and those which require resort to an adversarial procedure is no longer a viable basis on which to determine whether the bankruptcy court may exercise its jurisdiction.*

*The new Bankruptcy Rules, in Part VII, make complete provisions for adversary proceedings.* Rule 701, in particular, states that these rules govern any proceeding instituted by a party before a bankruptcy judge to recover money or property. Rule 102 states that all proceedings in the case, implicitly including adversary proceedings, ought to be before the referee except as specifically provided. Given the clear intent of the new rules that adversary proceedings be conducted before the referee, and these rules having made ample provision for adversary proceedings, *there no longer remains any reason to deny the bankruptcy court this aspect of the jurisdiction conferred upon it.* . . . Thus, in deciding whether the bankruptcy court has jurisdiction, the court need not look into whether it has possession, either actual or constructive, of the property in question . . . The bankruptcy court has constructive possession of a chose in action if the bankrupt remained the legal owner thereto up to the time of filing the petition *and if there is not a bona fide dispute as to the actual existence of the chose in action.* (emphasis added.)

The words "chose in action" have been held to mean nothing more than the words "right of action." *See* 73 C.J.S. *Property* § 9(1), (2), and cases cited therein. It has been said to include all rights of action, whether *ex contractu* or *ex delicto*. *Gregory v. Colvin,* 235 Ark. 1007, 363 S.W.2d 539 (1963).

The Court in *Morrison* declared constructive possession of a chose in action to be in the bankruptcy court so long as "there is not a *bona fide* dispute as to the actual existence of the chose in action."

▉ There are several alternative interpretations of this limitation. If the words "*bona fide* dispute as to the actual existence of the chose in action" are taken to mean "*bona fide* dispute as to the *validity* of the claim," then only actions not disputable in good faith could be heard under the summary jurisdiction of the referee. Given this limitation, the jurisdictional problems are minimized. The problem with this interpretation in the instant case is that appellant raised a *bona fide* defense to the Trustee's insurance claim, which required a trial by jury to resolve. Appellant contended from the outset that the bankrupt's losses were not covered by the insurance policy because of the language of three exclusionary clauses pertaining to mysterious disappearances, neglect, or fraudulent acts. Although Judge Baker reasoned that these clauses were ambiguous as a matter of law, a jury was required to resolve the issue of coverage because *that* issue could not be decided as a matter of law. Therefore, we conclude that only in those rare instances in which no *bona fide* defense may be asserted against the claim, had the issue been litigated as a purely civil matter, may the bankruptcy referee exercise summary jurisdiction over choses in action. This is not such a case, and thus, under this interpretation, there is no support for the exercise of summary jurisdiction by the referee over the insurance claim.

The reasons for this should be obvious. Any other rule would make jurisdiction dependent upon the outcome, *i.e.,* if there was in fact no debt, there was in law no "property" adhering in the debtor at the time of filing the petition, and thus, summary jurisdiction would be lacking over the claim. Subject matter jurisdiction lacking, there is no *res judicata* effect, and a prevailing third party in the bankruptcy court may well have to face another trial on the same claim in the District Court and State Court, with a possibly conflicting result.

On the other hand, if the terms "chose in action" are regarded as synonymous with the right to bring suit *regardless* of the validity of the underlying disputed claim, then the bankruptcy referee would be acting with plenary jurisdiction in the guise of summary jurisdiction which it may not do consistently with 11 U.S.C. § 46, (former). Even if 11 U.S.C. § 46 *were* to allow the bankruptcy referee to exercise jurisdiction over the broad myriad of types of cases which this interpretation would allow, Article III of the United States Constitution

would prohibit Congress from conferring such Article III power on non-Article III judges or referees.

The term "property" construed this broadly, with respect to the summary jurisdiction of the bankruptcy referees to adjudicate controversies relating to property over which they have actual or constructive possession, makes the exception swallow the rule.

Under the 1898 Bankruptcy Act, "Courts of Bankruptcy" were established by Congress and defined as "the United States district courts and the district courts of the Territories and possessions to which (Title 11) is or may be applicable." 11 U.S.C. § 1(10), (former). "Court" was defined to mean "the judge or the referee of the court of bankruptcy in which the proceedings are pending." 11 U.S.C. § 1(9), (former).

11 U.S.C. § 11(a)(7), (former), provides in part:

> [W]here in a controversy arising in a proceeding under this title an adverse party does not interpose objection to the summary jurisdiction of the court of bankruptcy ... he shall be deemed to have consented to such jurisdiction.

■ It is well settled that plenary procedures are necessary so long as the questioned property lies in the actual or constructive possession of a third party who asserts a *bona fide* claim thereto. *In re Holland,* 411 F.Supp. 730 (E.D.Wis.1976).

Obviously, the "property," *i.e.,* the insurance proceeds, were held by the third party, the insurer, who asserted a *bona fide* claim thereto. Although Judge Baker, in line with a number of cases, reasoned that the Trustee constructively possessed the chose in action, *i.e.,* the right to sue to recover the proceeds, such a reasoning, in effect, places the "property" in the possession of two adverse claimants, one "property" being the funds and the other being the chose in action. This being the case, it is difficult to conceive of a case in which the bankruptcy court could not exercise jurisdiction as broad as that of the district court. This is far broader than the grant of jurisdiction

contemplated by 11 U.S.C. § 11(a)(7), (former), and 11 U.S.C. § 46, (former).

The United States Supreme Court recently implicitly rejected the contention that jurisdiction under the 1898 Act extends as far as the Trustee would have us hold. In *Northern Pipeline Co. v. Marathon Pipeline,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court, in reviewing the constitutionality of the Bankruptcy Reform Act of 1978, noted that the new Act provided that "the bankruptcy court for the district in which a case under Title 11 is commenced shall exercise *all* of the jurisdiction conferred by this section on the district courts." *Marathon,* at n. 3. Said the Court of this:

> The jurisdiction of the bankruptcy court created by the (new) Act is *much broader* than that exercised under the former referee system. (emphasis added.)

*Marathon,* 102 S.Ct. at 2862–2863 (1982). Further:

> This jurisdictional grant (of the new Act) empowers bankruptcy courts to entertain a wide variety of cases involving claims that may affect the property of the estate once a petition has been filed under Title 11 of the Act. Included within the bankruptcy court's jurisdiction are suits to recover accounts, controversies involving exempt property, actions to avoid transfers and payments as preferences or fraudulent conveyances, and *causes of action owned by the debtor at the time of the petition for bankruptcy.* The bankruptcy courts can hear claims based on state law as well as those based on federal law. (emphasis added.)

*Marathon,* 102 S.Ct. at 2862 (1982).

This quotation suggests rather strongly that the Supreme Court does not believe that bankruptcy referees could, under the summary jurisdiction conferred by the 1898 Act, exercise judicial power over any and all "causes of action owned by the debtor at the time of the petition for bankruptcy." Yet this is the logical extension of the Trustee's argument under the 1898 Act.

· Since the new bankruptcy judges do not serve for life subject to their "good behav-

ior" and because their salaries were subject to diminution by Congress, bankruptcy judges created by the 1978 Act were held not to be Article III judges. *Marathon,* 102 S.Ct. at 2866 (1982).

The Supreme Court reasoned that there are indeed instances in which it has approved conferral of broad adjudicative powers upon judges unprotected by Article III.

The first such instance is when Congress, pursuant to its enumerated Article I powers, may establish legislative courts that have jurisdiction to decide cases to which the Article III judicial powers of the United States extends. These circumstances exist in three narrow situations, each recognizing a circumstance in which the grant of power to the Legislative and Executive Branches was historically and constitutionally so exceptional that the congressional assertion of a power to create legislative courts was consistent with the constitutional mandate of separation of powers.

The first exception from the general prescription of Article III pertains to the creation by Congress of non-Article III "territorial courts" in geographical areas in which no state operated as sovereign. *See, for example, Amer. Ins. Co. v. Canter,* 1 Pet. 511, 7 L.Ed. 242 (1828). The Supreme Court has acknowledged Congress' authority to create courts for those territories and the District of Columbia. *See also Kendall v. United States,* 12 Pet. 524, 9 L.Ed. 1181 (1838).

A second class of cases wherein the Supreme Court has sustained the creation of non-Article III courts by Congress and the Executive Branch is where it is necessary to administer and establish courts martial. *See Dynes v. Hoover,* 20 How. 65, 15 L.Ed. 838 (1858).

A third exception exists wherein the Supreme Court has upheld the constitutionality of legislative courts and administrative agencies created to adjudicate public rights. *See Murray's Lessee v. Hoboken Land & Imp. Co.,* 18 How. 272, 15 L.Ed.2d 372 (1855). The Court held, however, that "the liability of one individual to another" is a "matter of private rights." *Marathon,* 102

S.Ct. at 2870–2871 (1982), *quoting Crowell v. Benson,* 285 U.S. 22 at 51, 52 S.Ct. 285 at 292, 76 L.Ed. 598.

The Court further held that Congress' constitutional authority to establish "uniform Laws on the subject of Bankruptcies throughout the United States," Art. I, § 8, cl. 4, would not support the broad range of jurisdiction created by the new Act.

■ To determine the extent to which Congress may constitutionally vest traditional judicial functions in non-Article III officers, two principles must be considered. First, when Congress creates a substantive federal right it possesses substantial discretion to prescribe the manner of adjudication, "including the assignment to an adjunct of some functions historically performed by judges." *Marathon,* 102 S.Ct. at 2876. Second, the functions of any such "adjunct" must be limited in a manner in which "the essential attributes" of judicial power are retained in the Article III court. *Marathon, supra.*

However, the Supreme Court made clear that Congress does not possess the same degree of discretion in assigning traditionally judicial power to "adjuncts" engaged in the adjudication of rights *not* created by Congress. *Marathon,* 102 S.Ct. at 2877, *citing Crowell v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598. This distinction is required by Article III. *Marathon,* 102 S.Ct. at 2877.

As the Supreme Court declared in *Marathon:*

Indeed, the case before us, which centers upon appellant Northern's claim for damages for breach of contract and misrepresentation, involves a right created by *state* law, a right independent of and antecedent to the reorganization petition that conferred jurisdiction upon the bankruptcy court. Accordingly, Congress' authority to control the manner in which that right is adjudicated, through assignment of historically judicial functions to a non-Article III "adjunct," plainly must be deemed at a minimum. Yet it is equally plain that Congress has

vested the "adjunct" bankruptcy judges with powers over appellants' state-created right that far exceeds the powers that it has vested in administrative agencies that adjudicate only rights of Congress' own creation.

*Marathon,* 102 S.Ct. at 2878.

Thus, the question arises whether the bankruptcy referee may *constitutionally,* as opposed to *statutorily,* exercise the power he did in the instant case.

We note, as the Supreme Court did in *Marathon,* that the 1978 Act made significant changes from the 1898 Act, regarding the powers of the bankruptcy court. First, before the 1978 Act, the referee theoretically had no jurisdiction, except with consent, over controversies beyond those involving property in the actual or constructive possession of the court. Second, the bankruptcy judges, supposedly, have broader powers under the 1978 Act than those of the referee, *i.e.,* all ordinary powers of the district courts, 28 U.S.C. § 1471. Finally, before the 1978 Act, the bankruptcy referees were, at least in theory, subordinate adjuncts of the district courts, while the new bankruptcy courts were to be independent of the district courts. *Marathon,* 102 S.Ct. n. 31, p. 2876. Further, before the 1978 Act, bankruptcy referees were appointed and removable only by the district court. 11 U.S.C. § 62 (former). Additionally, the district court could unilaterally withdraw the case from the referee. Bankr.Rule 102. Finally, the tenure of the referees was not subject to the "political" branches of government.

These changes in the powers of bankruptcy judges will be addressed in turn. First, although the referee theoretically had no jurisdiction over controversies beyond those involving property in the possession of the trustee, without consent, the expansive interpretation given 11 U.S.C. §§ 46, 11(a)(7), (former), by the court below as to what constitutes "property" in the "possession" of the trustee, is so broad as to be, for all practical purposes, equivalent to the "*related to* cases under Title 11" language of 28 U.S.C. § 1471(b), which the Supreme Court

in *Marathon* declared constitutionally infirm.

Second, although the new bankruptcy judges may exercise all ordinary powers of the district courts, under the 1898 Act the referee exercised the same powers as the bankruptcy court and, as noted, under the *Morrison* rationale, the referee may then exercise substantially the same powers as a district court sitting as a district court, *i.e.,* exercise jurisdiction over all choses in action possessed by the debtor. In this regard, the Supreme Court "hinted" that constitutional problems lurk amidst such broad concepts of "property" and "possession."

> Appellants and Justice White's dissent also rely on the broad powers exercised by the bankruptcy referees immediately before the Bankruptcy Act of 1978 … *But those particular adjunct functions, which represent the culmination of years of gradual expansion of the power and authority of the bankruptcy referees, see* 1 *Collier on Bankruptcy* ¶ 1.02 (15th ed. 1981), *have never been explicitly endorsed by this Court.* In *Katchen v. Landy,* 382 U.S. 323, [86 S.Ct. 467, 15 L.Ed.2d 391] (1966), on which the dissent relies, there was no discussion of the Article III issue. (emphasis added.)

Thirdly, although the bankruptcy referees were in theory subordinate adjuncts of the district courts, Rule 810 of the Bankruptcy Rules, which became effective October 1, 1973, required the district court to accept the referee's findings of fact unless clearly erroneous, regardless of the preponderance of the evidence, and thus requires the same effect to be given the referee's findings as Rule 52(a), Fed.R.Civ.P., accords to findings of the district court on appeal. *Matter of Multiponics, Inc.,* 622 F.2d 709 (5th Cir.1980). In practice, the district courts rarely performed supervisory functions over the referee on an on-going basis and the power of the district court to withdraw a case from a referee was seldom exercised.

Fourthly, although appointment or tenure of the bankruptcy referee was not subject to the executive or legislative branches

of government, the referees could be removed at any time by the district court for "incompetency, misconduct, or neglect of duty," the same grounds for removal applicable in *Marathon* under the new Act during the transition period. 11 U.S.C. § 62(b) (1976 ed.); *see* § 404(d), 92 Stat. 2684. Further, practical realities dictate that it makes little difference where coercion or pressure originates, whether it be the voters, the Congress, the Executive, the administrative bodies or the judiciary.

In *Crowell v. Benson, supra,* the Supreme Court approved the use of administrative agencies as adjuncts to Article III courts. In *United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), the Supreme Court approved the use of magistrates as adjuncts to Article III courts.

In *Marathon,* the Supreme Court said:
Unlike the administrative scheme that we reviewed in *Crowell,* the (new) Act vests all "essential attributes" of the judicial power of the United States in the "adjunct" bankruptcy court. First, the agency in *Crowell* made only specialized, narrowly confined factual determinations regarding a particularized area of law. In contrast, the subject matter jurisdiction of the bankruptcy courts encompasses not only traditional matters of bankruptcy, but also "all civil proceedings arising under title 11 or arising in or *related to* cases arising under title 11." 28 U.S.C. § 1471(b)."
*Marathon,* 102 S.Ct. at 2878.

The same could be said for the powers of the bankruptcy referees under the trustee's proffered concepts of "property" and "possession" discussed earlier.

The Court said further:
Second, while the agency in *Crowell* engaged in statutorily channeled factfinding functions, the bankruptcy courts exercise "*all* of the jurisdiction" conferred by the Act on the district courts.
*Marathon,* 102 S.Ct. at 2878.

Similarly, under the 1898 Act, the referees exercised substantially, if not *all,* the jurisdiction conferred *by the Act* on the

district court, and under the *Morrison* approach, a very substantial amount of jurisdiction conferred on the district court in general.

The Court continued:
Third, the agency in *Crowell* possessed only a limited power to issue compensation orders pursuant to specialized procedures, and its orders could be enforced only by order of the district court. By contrast, the bankruptcy courts exercise all ordinary powers of district courts....
*Marathon,* 102 S.Ct. at 2879.

■ Under the 1898 Act in effect here, the orders of the bankruptcy court are binding and appealable. The same effect adheres as to its findings as to those of the trial court in civil litigation. Rule 810 of the Bankruptcy Rules does not retain the provision of General Order 47 authorizing receipt of further evidence by the district court in connection with a review of a referee's order or findings. *See* Advisory Committee's Note to Rule 810; *see also* Bankr.Rules 803 and 810.

Additionally, the orders issued by the agency in *Crowell* were to be set aside if "not supported by the evidence."

The Court concluded, in *Marathon,* that:
In short, the "adjunct" bankruptcy courts created by the Act exercise jurisdiction behind the facade of a grant to the district courts, and are exercising powers far greater than those lodged in the adjuncts approved in either *Crowell* or *Raddatz.*
*Marathon,* 102 S.Ct. at 2879.

We think, although perhaps a closer question than the one presented in *Marathon,* that the 1898 Act, *as expanded* by the courts in *Morrison* and other cases, and as urged by the Trustee, and *as applied* in the instant case, "confers powers far greater than those lodged in the adjuncts approved" in *Crowell.*

In *Raddatz, supra,* the Supreme Court upheld the 1978 Federal Magistrates Act, which permitted district court judges to refer certain pretrial motions, including suppression motions based on alleged violations of constitutional rights, to a magis-

trate for initial determination. In upholding the Magistrates Act against Article III challenges, the Court observed that the magistrate's proposed findings and recommendations were subject to *de novo* review by the district court, which is free to rehear the evidence or call for additional evidence.

Under the 1898 Act as presently applied, the district court cannot review the evidence *de novo*, but is limited to the "clearly erroneous" standard, and may not rehear the evidence or hear additional evidence.

Under the Magistrates Act, the magistrate considers motions only on an *ad hoc* reference from the district court.

Although the Court in *Raddatz* noted that magistrates were appointed, and subject to removal by the district court, as are the bankruptcy referees under the 1898 Act, as noted, it makes little difference where any outside "persuasion" originates, the key being that "the ultimate decision-making authority respecting pretrial motions clearly remained with the district court," *Marathon,* 102 S.Ct. at 2875–2876, under the Magistrates Act, while under the 1898 Act, as presently applied in this case, it does not. Thus we conclude that the 1898 Act, *as applied* by the courts in *Morrison* and other cases, and *as applied* in the instant case, "confers powers far greater than those lodged in the adjuncts approved" in *Raddatz.*

This being the case, we think it clear that the "chose in action" fiction utilized in cases under the 1898 Act and in the instant case results, in effect, in the referee's exercise of jurisdiction over all "civil proceedings arising under title 11 or arising in or related to cases under title 11," declared unconstitutional in *Marathon.*

■ Our holding is that the 1898 Act does not grant jurisdiction to the referee to adjudicate controversies over property in the actual or constructive possession of a third party, unless there be no question that the third person cannot assert, in good faith, any defense in law or in fact to the trustee's claim. Only in the instance where the right to recover is clear and not disputa-

ble in good faith does the law treat the possession of the right to recover the property as constructive possession of the property itself. The referee would then, and only then, have summary jurisdiction, because

> . . . the restructuring of debtor-creditor relations, *which is at the core of the federal bankruptcy power,* must be distinguished from the adjudication of state-created private rights, *such as the right to recover contract damages* that is at issue in this case. (emphasis added.)

*Marathon,* 102 S.Ct. at 2871–2872.

Jurisdiction was not so conferred upon the referee in bankruptcy, because a plain reading of the 1898 Act demonstrates that Congress never intended bankruptcy referees to exercise plenary jurisdiction over disputed claims at law and equity, *i.e.,* choses in action which the debtor happened to possess at the time the petition was filed.

■ Alternatively, we hold that if the 1898 Act was intended to confer such jurisdiction as was exercised in the instant case upon the referees, such a conferral violates the constitutional principle that " 'the essential attributes' of judicial power" must be retained in the Article III court. *Marathon,* 102 S.Ct. at 2876.

Whether this constitutional bar would be lifted should the district court possess *de novo* appellate review and a freedom to rehear the evidence or hear additional evidence is a question we need not decide; however, in this regard, *see* notes 28 and 39, pp. 2874–2875 and pp. 2879–2880, respectively, to *Marathon.*

As the above jurisdictional issue is dispositive, we need not reach appellant's other arguments, but the Court notes in closing that both parties submitted excellent and persuasive briefs. However, the Court would caution appellant against excessive or undue criticism of the rulings of the bankruptcy court in the "heat of argument." Both parties are to be commended for their excellent scholarship and assistance to the Court.

An order in accordance with the above will be concurrently entered.