Ringo v. Wing.

---

## RINGO v. WING.

1. CHATTEL MORTGAGES: *Failure to record: Property put into partnership.*

   F. mortgaged a lot of machinery to the plaintiff, and before the mortgage was filed for record formed a partnership with W. into which he put the machinery. W. sold his interest in the partnership to C., Y. & R., who continued the business with F. In an action to foreclose the mortgage, *Held*: That on the formation of the partnership between F. and W., F. ceased to have any individual interest in the machinery, and as the mortgage had not then been filed for record, it can only bind such interest as F. may have in the property conveyed by it, after a settlement of the partnership affairs.

2. PARTNERS: *Liability of incoming partner.*

   An incoming partner of an existing business is not bound for the previous debts of the concern, unless he makes himself so by express agreement, or by such conduct as will raise the presumption of a special promise.

3. SAME: *Promise to pay partner's private debt: Action on.*

   W. purchased a half-interest in the business of F., with whom he formed a co-partnership, and thus acquired an interest in assets to which the plaintiff had a right to look for the satisfaction of a debt due to him from F. As a part of the consideration of his purchase, W. promised F. to pay one-half of the latter's indebtedness to the plaintiff. *Held:* That this promise being for the benefit of the plaintiff, inures to him by an equitable subrogation, and he can maintain an action upon it against W.

APPEAL from *Pulaski* Chancery Court.

C. B. MOORE, Sp. Chancellor.

*Ratcliffe & Fletcher* for Ringo *et al.*

The mortgage is void. It is executed in the name of the "Furniture Works," signed by Flowers as manager, when Flowers was the real party. *19 Ark., 602; 36 id., 466.*

The acknowledgment is defective and void; the word "purposes" is left out. *32 Ark., 453.*

But if the mortgage be valid between the parties, it cannot prevail against the partners and the partnership creditors. *77 Ind., 361.* It makes no difference whether the partnership became insolvent before or after the mortgage was recorded. *38 Ohio St., 339; 86 N. Y., 280; 11 N. H., 404; 36 Ark., 612.*

*S. R. Allen* for Wing & Co.

Flowers was the sole proprietor of the "Furniture Works," the mortgage was his act and deed and bound him. The mortgage was good between the parties, and the acknowledgment is in substantial compliance with the statute.

While the mortgage may not hold the half interest sold to Walker, yet it bound Flowers' interest, and Chapman, Ringo, *et al.*, having due notice of the claim of Wing & Co. on Flowers' interest before they purchased into the concern, are bound by it. They came in subject to it.

As to the liability of Walker, the proof shows and Walker admits he agreed to pay his *proportion* of Wing's claims. This makes him jointly liable with Flowers for the debts. The question of the statute of frauds is not raised, for Walker did not plead it. *32 Ark., 97.* But if he had, it was not available. The promise was made to obtain a direct personal advantage to himself, a half interest in the Furniture Works, and was not within the statute. *Add. on Cont., vol. 1, p. 313, sec. 210; Bishop on Cont., zecs. 1256 to 1266.*

Wing should have had a judgment against Flowers and Walker for the whole of their claim.

*Jones & Martin* for Walker.

The promise of Walker was to Flowers, and Wing & Co. could not sue upon it.

But this promise was a mere verbal one, and within the statute of frauds.

The pleadings and proofs show that Walker never assumed any debt to Wing & Co. Besides, Wing never appealed from the decree fixing their lien on one-half the property.

*S. R. Allen* in reply.

The promise by Walker to Flowers was good, and Wing could sue on it. *77 Penn. St., 143; 18 Am. Rep., 438.*

COCKRILL, C. J. This suit was instituted by D. R. Wing & Co. to foreclose a mortgage upon a lot of machinery, executed by P. Flowers, who was doing business under the style of the "Furniture Works," to secure a debt due by him to Wing & Co., which was contracted with reference to his furniture manufacturing business. The mortgage was executed in the autumn of 1883, and was filed for record in December, 1884. The acknowledgment does not declare that the mortgage was executed for the "purposes" therein set forth. After its execution, John M. Walker purchased a half interest in the business of the Furniture Works and formed a co-partnership with Flowers. They continued the business, as before, under the same style. In June, 1884, Walker sold his interest in the concern to Chapman, Yonley & Ringo, and they, in co-partnership with Flowers, continued the business without change in the firm name. The mortgaged machinery which Wing & Co. are seeking to pursue, was successively the property of each of the firms doing business as the Furniture Works. Wing & Co. made all of the parties above named defendants to their complaint. They alleged that each of the purchases of the machinery had been made subject to the mortgage, and that Walker, as a part of the consideration of the purchase by him of the assets of the Furniture Works, had assumed to pay off and discharge the

mortgage, together with an unsecured book account contracted before that time by Flowers on behalf of the concern. They prayed for a decree *in personam* against Flowers and Walker for the full amount of their claims, and ask that the machinery be subjected to the payment of the mortgaged debt.

Walker answered, denying that he had bought subject to the mortgage, or assumed any liability with-reference to it, but admitted that he had agreed with Flowers that he would assume and pay off a portion of the indebtedness of the Furniture Works existing at the time he bought.

The other defendants filed a joint answer and cross-complaint, denying the validity of the mortgage, because it had not been acknowledged and filed for record when they purchased; and sought to dissolve the partnership and close up its affairs. The Chancellor appointed a receiver to take charge of and sell the effects of the firm; paid off the firm debts; retained in court the fund arising from a sale of the mortgaged property; adjudged that the firm was indebted to Ringo, one of the partners, for money advanced to it in the sum of $2000, and to Chapman, another partner, in the sum of $600; declared the mortgage a lien upon a one-half undivided interest of the property described in it, superior to the partners' right of reimbursement out of the firm assets; and directed one-half of the proceeds of the sale of the property to be paid to Wing & Co. as a credit on their mortgage debt, and the other half to Ringo to repay him in part for advances made to the firm, over and above the sum due his co-partner, Chapman; and rendered a personal judgment against Flowers for the mortgage debt and one-half of the open account, and against Walker for the other moiety of the latter debt.

Ringo appealed from so much of the decree as gave Wing & Co.'s mortgage a preference over his claim against assets of the concern; Wing & Co. appealed, because they did not get a decree *in personam* against Walker and Flowers together for

the whole amount of the indebtedness contracted by Flowers for the Furniture Works before Walker became a partner; and Walker appealed because of a decree against him for any amount. Other parties were drawn into the litigation and other interests were adjudicated by the court, but the facts stated present the questions raised by the appeals.

I. Ringo's appeal relates solely to that part of the decree which makes Wing & Co.'s mortgage debt paramount to his claim to the assets described in the mortgage.

1. CHATTEL MORTGAGE: Failure to record: Property put into partnership.

That the mortgage executed by Flowers to Wing & Co. is binding as between the parties to it; and that Ringo is entitled in equity to reimbursement out of the partnership assets for advances made by him to the firm in preference to the unsecured individual creditors of his co-partner, Flowers, are propositions that need only to be stated to be conceded. The question is, is Ringo's equity superior to the unrecorded mortgage executed by the partner before the partnership was formed?

Under our system of registration, a mortgage is not a lien against a title, right or interest acquired by a stranger before the mortgage has been acknowledged or proved as required by the statute, and filed in the office of the recorder. The first case in our Reports construing the statute is *Main v. Alexander, 9th Ark.*, where the lien of an attachment was declared to be superior to an unregistered mortgage; and a purchaser of mortgaged property, even with actual notice of the mortgage, has been frequently adjudged to take free of the mortgage lien.

The Chancellor in this case held that the sale of the property by Flowers to Walker, and by Walker to Ringo and the others, was merely the sale of an undivided half interest, and that the other moiety still remained in Flowers, and was therefore subject to the lien.

But neither of the sales can be regarded simply as the transfer of an undivided moiety of the property owned by the persons operating the Furniture Works. When the co-partnership between Flowers and Walker was formed, with the property in controversy as a part of the capital stock, Flowers must be regarding as selling the whole property to the concern, in consideration of the price paid and promises made him by Walker. Flowers did not thereafter own an undivided one-half of the property of the firm. His interest was only the right to share in the surplus remaining after the debts were paid and the partnership affairs adjusted between him and Walker. To the extent that his rights as a partner reached, Walker stood to the mortgage in the attitude of a purchaser, and to that extent the mortgage lien was of no force. It could only be enforced against the share that might be set aside to Flowers after the partnership affairs should be settled. When the partnership of Flowers & Walker was dissolved, and the new partnership of Flowers, Chapman, Yonley & Ringo was formed, the same rights and relations existed as in the first sale and partnership. The mortgage was not paramount therefore to the interest acquired by the successive partners who entered the firms.

After these transactions the mortgage was recorded, and if the defective acknowledgment was cured by the healing act of April 1, 1885, the instrument had no greater effect than a mortgage executed and acknowledged by Flowers, and filed for record as of that date. But he was then a member of the firm of Flowers, Chapman, Yonley & Ringo, and the debt he attempted to secure was not a liability of that co-partnership. All that the mortgagees can claim, under the circumstances, is that the mortgage binds whatever interest the mortgagor may have in the property assigned by the mortgage after a settlement of the partnership affairs. *Nichol v. Stewart, 36 Ark., 612; 1 Jones on Mort., secs. 119, 120; Norwalk Nat. Bank v. Sawyer, 38 Ohio St., 339; Tarbell v. West, 86 N. Y., 280.*

In this case it turns out that the mortgaging partner had no interest in the assets upon a settlement of the firm business, and there is therefore nothing for the mortgage to bind. The Chancellor erred in decreeing it a lien upon any part of the assets.

II. The appeals of Wing & Co. and Walker go to one and the same question—that is, did Walker become liable to Wing & Co. for the debts due them by the Furniture Works, contracted by Flowers before the formation of their co-partnership?

2. PARTNERS: Liability of incoming partner.

There is no presumption that an incoming partner of an existing business or partnership, assumes liability for the previous debts of the concern. He is not bound for such debts unless he makes himself so by express agreement or by such conduct as will raise the presumption of a special promise. *1 Ewell's Lindley on Part., \*392 and notes.*

There was no evidence showing that Flowers and Walker agreed to be jointly liable for the claims due Wing & Co., which had been contracted by Flowers alone. No express promise to Wing & Co. to assume the payment of these debts was shown to have been made by Walker. Stephens, a member of the firm of Wing & Co., testifies that Walker promised to settle the matters. But this was after the dissolution of the firm of Flowers & Walker, and if Walker was not bound prior to that time, he could not be held by that promise, because it was without consideration and an agreement to pay the debt of another not in writing. But in Walker's answer we have this admission, to-wit: that "he does not deny assuming, or agreeing to pay *his proportion* of the amount due Wing & Co., with Flowers." This must be taken in connection with the allegation of the complaint to which it is responsive, to the effect that he had assumed the payment of this indebtedness as a part consideration of his purchase into the concern with Flowers. But, *his proportion* of the amount due Wing & Co.

is only what he agreed to pay, inasmuch as it is by his promise alone that he can be held for any part of it. This proportion was one-half of the indebtedness. But it is argued for Walker that the agreement to pay half of the indebtedness was made with Flowers, and that, as Wing & Co. were not parties to it, they cannot have judgment against Walker by reason of anything it contains. The proof shows that Walker assured Wing & Co., about the time of his purchase, that he had taken charge of the assets of the Furniture Works for the purpose of seeing that the proceeds of sales were applied in part to the discharge of their claims. We may take this as the statement of the terms in part of his contract with Flowers. The latter had transferred to Walker an interest in assets to which Wing & Co. had a right to look for the satisfaction of their claims, and hence the promise of Walker to Flowers to pay one-half of these claims was a promise for their benefit. It was, in effect, a promise by Walker to pay Flowers by paying Wing & Co., and it enures by an equitable subrogation to Wing & Co. The objection that they could not sue Walker upon it is not tenable. *Hecht & Imboden v. Caughron, 46 Ark., 132; Arnold v. Nichols, 64 N. Y., 117; Townsend v. Long, 27 P. F. Smith* [*Pa.*], *143.*

Wing & Co., sometime before the suit, got possession of an engine and boiler, the property of Flowers & Walker, and a part of that described in the mortgage, and after putting it in repair sold it for a sum sufficient, perhaps, to extinguish the demands against them. But it was proved that Wing & Co. purchased the property from Flowers for $225, and credited that amount on the mortgage debt, before making the sale. Walker at that time had retired from the firm, and left Flowers to settle their affairs. The sale by him, in part payment of Wing & Co.'s claim, was an act within the scope of his powers and bound Walker.

It follows that Wing & Co. should have judgment against

---

3. SAME: Promise to pay partner's private debt: Action on

Walker for one-half of the mortgage debt and book account, and against Flowers for the full amount of both, but they can have only one satisfaction of their debts; that they can take no part of the fund arising from the sale of the effects of the firm of Flowers, Chapman, Yonley & Ringo through the mortgage executed by Flowers, and that Ringo is entitled to be reimbursed from the whole instead of the half of that fund.

The decree is reversed, and the cause will be remanded with instructions to enter a decree in accordance with these directions.