BRYAN *v.* HOBBS.

Opinion delivered October 29, 1904.

DEED ABSOLUTE—WHEN CONSTRUED A MORTGAGE.—Where a mortgagee by duress compelled the mortgagor to execute an absolute deed to his wife in satisfaction of the mortgage debt and a further indebtedness which the mortgagor was willing to secure, equity will treat the instrument as a security merely, and grant relief on condition that the mortgagor pay the debt he intended to secure.

Appeal from Lee Chancery Court.

EDWARD D. ROBERTSON, Chancellor.

Reversed.

STATEMENT BY THE COURT.

On the 26th day of November, 1887, Young Hobbs, a negro, purchased of T. B. Holloman 160 acres of land in Lee county, for which he agreed to pay the sum of $900. Holloman executed a deed conveying the land to Hobbs, and reciting that he had paid $100 of the purchase price, and had executed his notes for the remainder, one note for $200 and two notes for $300 each. Some time afterwards Hobbs paid the $200 note. But before he paid the two remaining notes for $300 each they were transferred by Holloman to John C. Ward, a merchant with whom Hobbs had business relations. Afterwards Ward failed in business, and most of his property was seized by his creditors. Wishing to make some provision for his wife, Ida, he induced Hobbs to convey her the land mentioned in settlement of the two notes he had obtained from Holloman and certain other indebtedness due from Hobbs to him on a mercantile account for goods furnished. This deed by Hobbs to Ida Ward was executed on the 26th day of May, 1891, and recited a consideration of "$1,188 cash in hand paid."

Hobbs continued to remain on the land until 1893, when Ward took possession of it. Ward died in 1894 or 1895, the evidence not being clear as to the exact date. Hobbs moved back

on the land in early part of 1896, and set up the claim of owner-ship. In 1897 Mrs. Ward, who had intermarried with one Bryan, brought this action of ejectment to recover possession of the land. Hobbs for defense set up that the deed made by him to the plaintiff had been executed under duress, by reason of threats on the part of Ward that he would kill him unless he signed it. The case was transferred to the chancery court, and on a hearing there the court found that the deed from Hobbs to the plaintiff, Ida L. Bryan, was obtained by means of threats and menaces of bodily harm amounting to duress made by John C. Ward, the former husband of plaintiff, and that there was no consideration paid by plaintiff for the deed, but the court found that at the time the deed was executed Hobbs was indebted to John C. Ward for a balance due on the purchase money notes for land and also on a mercantile account, and the court referred the case to a master to state an account thereof, allowing Hobbs credit for the rental value of the land while Ward was in posses-sion thereof and for value of timber cut by Ward.

Afterwards the court found, on exceptions to the master's report, that the amount due Hobbs for rents and for timber cut overbalanced the debt due by him to Ward. The court thereupon found in favor of plaintiff Hobbs, and ordered that the deed from him to Mrs. Ward be cancelled, set aside and held for naught, and that Mrs. Bryan pay the costs of the action. Mrs. Bryan appealed.

*McCulloch & McCulloch,* and *Fizer & Beasley,* for ap-pellant.

Defendant's cross-bill was insufficient. 18 N. Y. Supp. 149; 7 Enc. Pl. & Pr. 247; 3 Bl. Comm. § 448; Sand. & H. Dig. § 4828; 6 Am. & Eng. Enc. Law, 88; 53 Ark. 532. It was error to allow certain depositions to be read in evidence, and no duress was shown. 15 Ark. 345; 6 La. Ann. 146; 10 La. Ann. 279; 57 Ia. 15, s. c. 10 N. W. 276; 78 Ind. 175; 18 Ark. 215; s. c. 26 Ark. 280; 61 Me. 227; 18 Ark. 215; 46 Ark. 220; 49 Ark. 70. Relief must be sought in reasonable time. 10 Am. & Eng. Enc. Law, 337; 134 Ill. 101; 50 Mo. 125; 36 Mich. 346.

*R. J. Williams,* for appellee.

There was no error in admission of depositions.  15 Ark. 345.  On question of duress, see Chitty, Cont. 217; 2 Greenlf. Ev. § 283; 26 Am. Dec. 370; Pars. Cont. 319; 26 Ark. 280.

RIDDICK, J. (after stating the facts).  This action was brought in the circuit court to recover 160 acres of land which the defendant had conveyed to the plaintiff.  The action was resisted on the ground that the deed was obtained by duress, and on that account the court was asked to cancel the deed, and the case was transferred to the chancery court to determine the issues involved.

It is a well-settled rule that one who would avoid his deed on account of duress must bring his action within a reasonable time, and if the only alternative here was to take the view contended for by plaintiff and uphold the deed, or that contended for by defendant and declare it void *in toto*, we are not sure that the finding would not have to be against the defendant, on the ground that he delayed too long before commencing proceedings to set it aside.  But there are two facts established by the evidence in this case very plainly.  One is that at the time Hobbs conveyed this land to Ida L. Ward he was indebted to her husband for a considerable sum on the two land notes and for goods and supplies furnished him.  The other is that this deed was executed in settlement or as a security for that indebtedness. There seems from the evidence never to have been any dispute between Hobbs and Ward as to the amount of this indebtedness. The difference, if any existed between them, was on the question of whether Hobbs should make an absolute deed in satisfaction of this debt or only give security for it.  Hobbs' own testimony shows that.  The deed was executed at the residence of John Ward, the husband of plaintiff, after he had failed in business, Dr. Ward, his father, being present at the time, and Hobbs testified on this point as follows, towit:

"Dr. Ward asked me to give them something to secure the money.  I told them that I was willing to give security for the money, but they wanted a deed to Mrs. Ward.  Dr. Ward said that John's creditors were about to take everything he had away from him, and they wanted me to make a deed to Mrs. Ward for this land.  I declined to do that.  When I told John Ward

that, he commenced to walk backward and forward on the gallery, and said, 'By God, you've got to give it up; you have it to do. I will kill you if you don't do it,' and then I did it, and went down to the store and acknowledged the deed."

There was other testimony tending very strongly to show duress, but the whole testimony shows that the duress was exercised to force Hobbs to execute an absolute deed, instead of a mortgage. Hobbs' testimony, above quoted, shows that Ward wanted security for his debt, but, as his creditors were pressing him, he wanted it in the form of an absolute deed to his wife, so as to shield it as much as possible from his creditors, whereas Hobbs only wanted to give security for the debt in the ordinary form. Not only this testimony of Hobbs, but the fact that he was allowed to remain on the premises for several years after the deed was executed without, so far as the proof shows, paying any rent, lends color to the belief that this deed was really intended as a security. Now, the court on the hearing below seems by its decree to have treated the deed as a mortgage, but in determining the amount due from Hobbs it gave, we think, too great weight to his testimony, and thus found that the debt he owed Ward had been discharged, when it seems to us that he still owed some $600 or $700. Hobbs admitted that he had not paid the two $300 notes, but stated that Holloman, the owner of the notes, had at one time offered to let him have the two notes for a cash payment of $500; that he made arrangements to secure the money with which to take up his notes, but found out that Ward had purchased the notes, and he refused to settle at that price. Now, there is nothing in that evidence to reduce the amount of the debt, but the court on this evidence directed the master to charge Hobbs with only $500 on account of the two notes, when, according to his own testimony, he had never paid any portion of those two notes. The owner of the notes had the right to sell them, and Ward had a right to purchase them. The mere fact that the owner had previously offered to sell them to Hobbs for less than their face value did not show anything constituting a payment on the notes, or estop Ward from claiming the face value thereof.

Then, again, Hobbs did not set up this claim of duress until after the death of Ward, the party to whom the debt was

due, and who would naturally be supposed to know as much or more about this debt than any one else. If any relief is granted Hobbs at this late day, justice requires that it should be done on the assumption that the amount named in his deed is the correct amount of the indebtedness due from him to Ward at the time the deed was executed. It would be very unfair and unjust to plaintiff to permit Hobbs to contradict that statement of the consideration after this lapse of time, and the death of plaintiff's only witness familiar with the dealings between Ward and Hobbs.

Plaintiff testified that she paid the amount named in the deed to Hobbs in money, but the weight of evidence is decidedly against this theory, and the chancellor was justified in rejecting it. On the other hand, Hobbs testified that nothing was paid. We take it that he meant by this that no money was paid, for his own evidence, as well as the other testimony, shows that there was a consideration for the deed. That consideration was the debt which Hobbs owed Ward. The amount named in the deed was the amount of that debt, as understood by the parties at the time the deed was executed, and we feel convinced that it was a correct statement of the sum due from Hobbs at that time, and that substantial justice can be done by taking it as the basis of a settlement between the parties and of the decree in this case.

The finding of the court that there was evidence of duress sufficient to justify the court in treating this deed as a mortgage will be sustained, but, following the rule that he who asks equity should do equity, the relief against the deed should be granted on condition that he pay his debt.

The clerk of this court is therefore ordered to state an account between the parties by charging Hobbs with the amount named in the deed with interest from that date, giving him credit with value of the timber and rent as found by the lower court. The clerk will make the computation, and ascertain in this way the balance still due from Hobbs, and the judgment will be reversed, and the cause remanded, with directions that the court below render a decree for that amount against Hobbs, and that the same be declared a lien on the land, and that, unless paid, the land be sold to pay the same.