In re REYNOLDS.

(District Court. W. D. Arkansas, Harrison Division. April 27, 1907.)

1. CHATTEL MORTGAGES—BILL OF SALE—DUTY TO RECORD.
A bill of sale conveying the grantor's stock of goods, fixtures, storehouse, and lot. as security for money loaned, was, in fact, a chattel mortgage. within Kirby's Dig. Ark. § 5396, declaring that a mortgage shall be a lien only for the time it is filed for record.
[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Chattel Mortgages, §§ 23–41.]

2. SAME—ACKNOWLEDGMENT—RECORD—RIGHTS OF CREDITORS.
A bill of sale, which was in fact a mortgage, covered the grantor's stock of merchandise, fixtures, storehouse, and lot; the grantor being left in possession with power to sell the merchandise in the ordinary course of business, and to purchase additional goods to keep up the stock. Held that, though such mortgage was fraudulent and void as to the stock of goods, it was valid as between the parties from the date of its execution, in so far as it covered the fixtures and real property, though not acknowledged or recorded, and as to such property was valid, as to the grantor's creditors from the date the grantee took possession, though the creditors might have had prior actual notice of its existence.
[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Chattel Mortgages, §§ 152, 372–392.]

3. BANKRUPTCY—LIENS—CHATTEL MORTGAGE—PREFERENCE.
Where a bill of sale of a merchant's stock, fixtures, storehouse, and lot, which was in fact a mortgage, was not acknowledged or recorded, as required by the laws of the state, and was only valid as between the parties in so far as it affected the fixtures and real property, and as against creditors only after the grantee took possession, which did not occur until after the grantor had become insolvent, and within four months prior to the institution of bankruptcy proceedings, such sale was void as a preference, as defined by Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], as amended by Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 [U. S. Comp. St. Supp. 1905, p. 689].

In the Matter of the Review of the Findings of the Referee Refusing to Allow the Claim of Mrs. Z. T. Poynter as a Secured Claim.

Alleyn Smith, for claimant.
Crump, Mitchell & Trimble, for opposing creditors.

ROGERS, District Judge. This case was tried before the referee on an agreed statement of facts. It appears from the agreed statement of facts, and other records before me: That on the 1st day of May, 1906, Mrs. Z. T. Poynter loaned to the bankrupt, John W. Reynolds, $1,200 in money, and at the same time Reynolds executed and delivered to her, as security for the money, the following paper:

"Bill of Sale.

"Know all men by these presents: That I, J. W. Reynolds, of Gassville, Baxter county, Arkansas, for and in consideration of the sum of twelve hundred dollars, to me in hand paid by Z. T. Poynter, of Gassville, Baxter county,

Ark., at and before the delivery of these presents, the receipt whereof is hereby acknowledged, do hereby bargain, sell, grant, convey, and deliver unto the said Z. T. Poynter the following property, goods and chattels, to wit: All of my entire stock of general merchandise, said stock located in the town of Gassville, Baxter county, Arkansas, said stock consists of hats, caps, shoes, dry goods, and notions, farming implements, hardware of all kinds, clothing, groceries, and the fixtures belonging to said stock 1 safe one store house and lot, located in the town of Gassville, Baxter county, Ark., owned by J. W. Reynolds. To have and to hold the same unto the said Z. T. Poynter her executors, administrators, and assigns forever. And the said J. W. Reynolds for myself and for my heirs executors and administrators do hereby covenant with the said Z. T. Poynter and with her executors, administrators, and assigns that I am the true and lawful owner of the said described property, goods, and chattels hereby sold, and have full power to sell and convey the same; that the title so conveyed is clear, free, and unincumbered; and, further, that I will warrant and defend the same against the claims of all persons whomsoever.

"Executed this the 1st day of May, A. D. 1906.      J. W. Reynolds."

That no part of said debt has been paid. That between May 1, 1906, and March 19, 1907, Reynolds, the bankrupt, remained in possession of all the property described in the bill of sale, and continued to sell, and had the right to sell, in the usual course of business, whatever goods out of said stock of merchandise he wished, and bought and added to the same as he did before the bill of sale was executed, and all of these facts were known to Mrs. Poynter, and she gave no notice to any one of the existence of said bill of sale, which was never acknowledged or recorded at any time. That the bankrupt was insolvent on the 19th of March, 1907, and such fact was known to Mrs. Poynter at that time. That on the 19th of March, 1907, the bankrupt delivered to Mrs. Poynter possession of all the property described in the bill of sale, and she retained possession thereof until dispossessed by the sheriff of the county in which the property was situate under an attachment against the bankrupt, which occurred about three hours after Mrs. Poynter came into possession thereof. On March 23, 1907, the bankrupt made a deed, conveying to Mrs. Poynter the real property mentioned in the bill of sale, which was subsequently reconveyed, and all the property at the time the petition in bankruptcy was filed is in the possession of the trustee; and Mrs. Poynter now asks to have her claim allowed as a secured claim, to have priority over the general creditors. It is agreed that the sole question presented by this record is whether or not the failure to acknowledge and record the bill of sale more than four months before the filing of the petition in bankruptcy was cured by Mrs. Poynter taking possession of the mortgaged property before the proceedings in bankruptcy were instituted, and whether such possession related back to and had the effect of making valid the mortgage from the date of its execution.

It is conceded that the bill of sale was, in fact, a mortgage, and under the decisions of the Supreme Court of Arkansas that concession is correct. Bryan v. Hobbs, 72 Ark. 635, 83 S. W. 341; Land v. May, 73 Ark. 415, 84 S. W. 489; Sharp v. Fleming, 75 Ark. 557, 88 S. W. 305; James v. Mallory, 76 Ark. 514, 89 S. W. 472.

Section 5396, Kirby's Dig. St. Ark., is as follows:

"Every mortgage, whether for real or personal property, shall be a lien on the mortgaged property from the time the same is filed in the recorder's office for record, and not before; which filing shall be notice to all persons of the existence of such mortgage."

In Etheridge v. Sperry, 139 U. S. 276, 11 Sup. Ct. 569, 35 L. Ed. 171, the United States Supreme Court said:

"While chattel mortgages are instruments of general use, each state has a right to determine for itself under what circumstances they may be executed, the extent of the rights conferred thereby, and the conditions of their validity. They are instruments for the transfer of property, and the rules concerning the transfer of property are, primarily, at least, a matter of state regulation. We are aware that there is a great diversity of rulings on this question by the courts of the several states, but, whatever may be our individual views as to what the law ought to be in respect thereto, there is so much of a local nature entering into chattel mortgages that this court will accept the settled law of each state as decisive in respect to any case arising therein."

To the same effect see In re H. G. Andrae & Co., 9 Am. Bankr. Rep. 135, 117 Fed. 561, decided by the United States District Court for the Eastern District of Wisconsin. For the correct determination of the question here presented, we must, therefore, look to the decisions of the Supreme Court of Arkansas construing the statute above quoted. Before doing so, it may be noted that the United States Circuit Court of Appeals for this (the Eighth) circuit, held in Eagan State Bank v. Rice, 9 Am. Bankr. Rep. 437, 119 Fed. 107, 56 C. C. A. 157, that:

"The legal effect of a mortgage upon a stock in trade where the mortgagor remains in possession with power to sell in the usual course of business, and he makes no attempt to comply with a provision therein that he shall make daily deposits of all sales to apply upon the debt secured, is to hinder and delay his creditors, and, if given within four months prior to the filing of his petition in bankruptcy is null and void under section 67e of the bankruptcy act, Act July 1, 1898, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449]."

In Lund v. Fletcher et al., 39 Ark. 325, 43 Am. Rep. 270, the court said:

"A mortgage of articles of merchandise left in the possession of the mortgagor, with power to sell in the ordinary course of business, is void, except between the parties to it; but, as to the other property not to be sold by the mortgagor, it is good."

See, also, Fink v. Ehrman, 44 Ark. 310.

These decisions strike down the mortgage in controversy, in so far as it applies to chattels left in the hands of the bankrupt with the right to sell in the usual course of business. The mortgage on the stock of merchandise left in the possession of the bankrupt with the right to sell in the usual course of business, and to buy and add new stock in the same manner, was void as to creditors ab initio, and continued void even after the possession was taken, for the reason that it was a fraud upon creditors under the Arkansas decisions. But the mortgage covered, in addition to the stock of merchandise, an iron safe and a house and lot, and fixtures. Under the Arkansas decisions the mortgage on the house and lot, fixtures, and safe, in the absence of fraud, is valid, and the lien fixed as between the parties from the date of its execution, although not acknowledged and recorded (Martin et al. v. Ogden, 41 Ark. 191), but it was invalid as to creditors until possession was taken

by the mortgagee, even though the creditors might have had actual notice of its existence from the date of its execution. Id.; Main v. Alexander, 9 Ark. 112, 47 Am. Dec. 732; Jacoway v. Gault, 20 Ark. 190, 73 Am. Dec. 494; Hannah v. Carrington, 18 Ark. 105; Carnall v. Duvall, 22 Ark. 136; Dodd v. Parker, 40 Ark. 536; Ringo v. Wing, 49 Ark. 457, 5 S. W. 787; Leonhard v. Flood, 63 Ark. 168, 56 S. W. 781; Smead v. Chandler, 71 Ark. 517, 76 S. W. 1066, 65 L. R. A. 353.

Under the agreed facts Mrs. Poynter gave no notice to anyone of the existence of the mortgage, and it must be found that no one had notice until possession was delivered to her by the bankrupt on the 19th of March, 1907. On that day, but three hours after she took possession of the property covered by the mortgage, the sheriff of the county dispossessed her under a writ of attachment; but she had then acquired, by the act of taking possession, a lien against all parties who subsequently acquired rights in the property. Apple White v. Harrell Mill Company, 49 Ark. 279, 5 S. W. 292. Did this right, so acquired, relate back to the execution of the mortgage so as to be valid against the creditors under the bankruptcy law? Under the laws of Arkansas, as we have seen, the lien does not attach as against creditors until the mortgage is filed for record, and in Birnie et al. v. Main, 29 Ark. 595, the court said, "The effect of recording a mortgage or other conveyance is not retrospective." Nor, in the opinion of the court, does the taking possession by the mortgagee of mortgaged property operate retrospectively. This conclusion is in harmony with the statute itself, which expressly provides that a mortgage, whether for real or personal property, "shall be a lien on the mortgaged property from the time the same is filed in the recorder's office for record, and not before." If the lien attached at all in this case, it was when the possession was taken, and not before, for the mortgage has never been recorded. In A., T. & S. F. Ry. Co. v. Hurley et al. (Eighth Circuit Court of Appeals of the United States, December Term, 1906) 153 Fed. 503, that court, speaking through Adams, J., said:

"The trustees stand in the shoes of the bankrupt. Whatever rights a third party had against the property of a bankrupt before adjudication that party, in the absence of fraud or fixed liens created by state statutes in favor of others, has against his estate in bankruptcy. Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986; Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577; Humphrey v. Tatman, 198 U. S. 91, 25 Sup. Ct. 567, 49 L. Ed. 956; York Mfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782. In Thompson v. Fairbanks, the Supreme Court said: 'Under the present bankruptcy act, the trustee takes the property of the bankrupt, in cases unaffected by fraud, in the same plight and condition that the bankrupt himself held it, and subject to all the equities impressed upon it in the hands of the bankrupt, except in cases where there has been a conveyance or incumbrance of the property which is void as against the trustee by some positive provision of the act.'"

It was held by the United States Court of Appeals for the Seventh Circuit in Re Antigo Screen Door Company, 10 Am. Bankr. Rep. 366, 123 Fed. 249, 59 C. C. A. 248, that, in the absence of fraud, such a mortgage is valid under the laws of Wisconsin, as against the trustee under the bankruptcy act of 1898. An examination of the cases cited

in that opinion will show that other courts, notably Massachusetts, have held the same. The evidence does not disclose any fraud when the mortgage was executed as to the property now under discussion, or even that the mortgagor was then insolvent. It was executed for a loan then made. It took nothing away from creditors. The loan was made in good faith, and the mortgagee got possession under it before any liens attached, and before bankruptcy proceedings began, but within four months of the institution of bankruptcy proceedings. I do not find such a mortgage is void as to creditors under the Arkansas decisions, and, if not void as to creditors under the Arkansas decisions, it is not invalid under the bankruptcy act as to the trustee, unless made void by some positive provision of the act. Is the mortgage void, as against the trustee, by any positive provision of the bankruptcy act? This question, I think, has been answered conclusively by the Eighth Circuit Court of Appeals in the case of First National Bank of Buchanan County St. Joseph v. Connett, reported in 142 Fed. 33, 73 C. C. A. 219, 5 L. R. A. (N. S.) 148. That case is, to all intents and purposes, on all fours with the case at bar. Indeed, the only difference is that, in that case, the mortgagor was insolvent when the mortgage was given, but the mortgagee was not aware of it. In the case at bar the testimony does not show whether the mortgagor was insolvent when the mortgage was given, or not. But he was insolvent, and the mortgagee knew it, when she took possession. The difference is immaterial, in the opinion of the court, and therefore the two cases are on all fours. In that case Judge Hook, speaking for the full court, said:

"Section 57g of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443]) provides that the claims of creditors who have received preferences voidable under section 60b shall not be allowed unless such preferences are surrendered. For the definition of a preference we must look to subdivision 'a' of section 60, and to subdivision 'b' for the element which makes it voidable. Section 60a provides, among other things, that a person shall be deemed to have given a preference if, being insolvent, he has *within four months before the filing of the petition* made a transfer of any of his property, the effect of which will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class; also, *where the preference consists in a transfer, such period of four months shall not expire until four months after the date of recording or registering of the transfer, if by law such recording or registering is required.*"

By the amendatory act of 1903 the first of the italicized provisions. was transposed from section 60b of the original act, while the latter is an entirely new feature. Subdivision "b" of this section, to which reference is made in 57g, provides that, if a bankrupt shall have given a preference and the person receiving it shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee. The bankrupt was insolvent when he executed the mortgages and when they were recorded. The mortgages constituted a transfer of his property, and their effect was to enable the bank to obtain a greater percentage of its claims than other creditors. They were recorded within four months of the filing of the petition in bankruptcy. Therefore, assuming that a recording is required

by the law of Missouri, it follows that a preference arose under section 60a. And, in our opinion, it also follows that the preference arose when the mortgages were recorded, and not as of the date they were given. In other words, the amendment of 1903 was intended to remedy the evil resulting from secret instruments of transfer of the bankrupt's property, the withholding of them from record until shortly before the institution of bankruptcy proceedings, and the then assertion of them as of the prior date of their execution and delivery. And this was accomplished by making the rights of a creditor thus favored determinable by the conditions existing when he caused the transfer to him to be recorded as required by the state law rather than by those existing at the time he secured it. Under the act of 1867, not only the question of requirement to record a chattel mortgage, but also the effect of noncompliance therewith, were exclusively controlled by the law of the state. The same construction has been applied to the original act of 1898. Unless there has been some departure from this construction in its relation to voidable preferences, the amendment of 1903 of section 60a, upon which subdivision "b" thereof depends, is wholly without significance. Contrary to a presumed intent in legislative amendments, it serves no purpose and performs no office whatever. Such result can be reasonably avoided by this construction of the amendment. It affects only those instruments of transfer which the state law requires to be registered or recorded; and, as to those, where there is delay, it provides that upon the question of voidable preference they shall speak as of the day of compliance with the local law, and not as of the day they were given. This would preclude the application of the doctrine of relation, and it would entail a consequence upon a failure to record that might not be imposed by the law of the state; but we deem it to be not only within the letter of the amendment, but also within the intention to correct an evil which flourished under the construction of the original act. Within the meaning of amended section 60a of the bankruptcy act, the Missouri law (Rev. St. 1899, § 3404 [Ann. St. 1906, p. 1936]) required the recording of chattel mortgages. To be sure, an unrecorded mortgage is not pronounced void absolutely and under all circumstances, but it "is required to be recorded" in the sense in which that phrase is customarily used, and the language of requirement is similar to that employed in the registry laws of most of the states. The word "required," found in the phrase, "the recording or registering of the transfer, if by law such recording or registering is required," of the amendment of section 60a, has reference to the character of the instrument of transfer required to be recorded by the state law rather than to the particular individuals who by reason of adventitious circumstances may or may not be affected by an unrecorded instrument. Thus an affirmative answer would unhesitatingly be given to the inquiry: "Does the law of Missouri require the recording of chattel mortgages?"

This case was followed by the Sixth Circuit Court of Appeals in the case of Loeser v. Savings Deposit Bank & Trust Company (C. C. A.) 148 Fed. 975.

The conclusion reached is that the mortgage is void in toto under section 60a of the bankruptcy act of 1898 as amended by section 13,

Act Feb. 5, 1903, c. 487, 32 Stat. 799 [U. S. Comp. St. Supp. 1905, p. 689]. An order will be entered disallowing the claim of Mrs. Poynter in toto until she has surrendered all the property covered by the mortgage in controversy in her possession or under her control. Upon a compliance with this order her claim will be allowed as an unsecured claim.

The referee is further directed to proceed with the administration of the bankrupt's estate in conformity with this opinion and the provisions of the bankruptcy law.