### In re DAVIS.

(District Court, E. D. New York. July 16, 1907.)

1. CHATTEL MORTGAGES—RIGHTS OF CREDITORS—DISPOSITION OF PROCEEDS OF PROPERTY.

A chattel mortgage on a stock of goods, though valid when made, there being no evidence that the mortgagor was then insolvent, or that it was given to hinder, delay, or defraud creditors, or to create a preference, is invalid as to subsequent creditors; it appearing the mortgagor was allowed to sell from the stock, without accounting for the proceeds, and it not appearing that the part so sold did not equal the mortgage debt.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Chattel Mortgages, § 412.]

2. SAME.

Though the lien of a chattel mortgage is lost as to a stock of goods, as against subsequent creditors of the mortgagor, because the mortgagee allowed the mortgagor to sell therefrom, without accounting for the pro-

ceeds, it is not on this account lost as to teams also covered by the mortgage and which the mortgagor retained.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Chattel Mortgages, § 376.]

3. BANKRUPTCY—EXPENSES OF RECEIVER—KEEPING MORTGAGED PROPERTY.

Where the mortgagee having a valid lien attempted to foreclose his chattel mortgage on horses of a bankrupt, but was prevented from doing so by the possession of the receiver, only such part of the expenses of keeping the horses as would necessarily have been incurred by him during foreclosure will be chargeable to the mortgagee, and the balance will be paid out of the bankrupt estate.

Thomas J. Ritch, for trustee.
Elmer P. Smith, for mortgagee.

CHATFIELD, District Judge. A petition in bankruptcy was filed herein upon November 22, 1906. At that time the bankrupt had in his possession a stock of groceries, which has since been sold, under an order of this court, and the proceeds held to await a determination as to the validity of a chattel mortgage given by the bankrupt, upon the 25th day of January, 1906, for $500, covering "2 horses, 4 wagons, 2 sleighs, 4 sets of harness, and all the stock and fixtures now in my store at Port Jefferson, L. I., N. Y." This mortgage was duly filed on February 5, 1906. The $500 for which the mortgage was given was made up of a loan to the bankrupt, amounting to $200, made previous to the execution of the mortgage, and to secure the mortgagee for indorsing a note of $300, made by the bankrupt, which the mortgagee was called upon to pay, and did pay, on the 1st of December, 1906. The trustee in bankruptcy, who now holds the proceeds from the sale, and the mortgagee, have submitted the question as to the validity of the mortgagee's lien, upon an agreed statement of facts. The horses, wagons, sleighs, harness, and fixtures sold for the sum of $418.89. The stock in trade sold for the sum of $500. It is admitted in the statement of facts that portions of said stock in trade, amounting to not less than $200, remained in the store until after the sale by the trustee in bankruptcy, and that the sum of $130 was expended by the receiver for the feeding and care of the horses. No evidence is presented, and no facts shown, to indicate that the bankrupt was insolvent at the time of making of the chattel mortgage, or that the execution and delivery of this mortgage was with intent to hinder, delay, or defraud creditors or to create a preference.

On these facts it would appear that the mortgage was valid at the time of its delivery. In the case of Brackett v. Harvey, 91 N. Y. 214, a chattel mortgage was held to be invalidated by an oral agreement to sell the mortgaged property, and to use the proceeds for the benefit of the mortgagor, either in carrying on business or replenishing a stock of goods. This depended on the doctrine that such an agreement would work to the fraud of subsequent creditors who had a right to suppose that the proceeds of whatever sales had been made had been applied to the payment of the chattel mortgage upon the original stock of goods. On the other hand, the case of Brackett v. Harvey, supra (as also the cases cited upon page 221 of the opinion in that case), held that a chattel mortgage was not void per se, because of the

provision allowing the mortgagor to sell the mortgaged property to pay the proceeds to the mortgagee, to be applied to a reduction of the debt. In the case at bar, the original stock of goods, to the amount of $200, being still in the possession of the mortgagor, the mortgage at the time of the filing of the petition in bankruptcy would have been a valid lien to that extent, if it had been shown that the property originally covered by the mortgage, but previously sold, had not been sufficient to extinguish more than $300, with interest, of the original debt. But no such testimony is presented. The facts show that the mortgagor was allowed to keep the mortgaged property in his possession, and to sell it, and no accounting of the proceeds is made. This would seem, so far as the stock of goods is concerned, to bring the case within the doctrine of Brackett v. Harvey, supra, and to show an understanding or oral agreement, which must be presumed would work to the fraud of creditors subsequent to the mortgagee. It would seem, therefore, that the chattel mortgage, in so far as the stock of groceries is concerned, is invalid.

As to the horses, wagons, etc., no such question arises. The mortgage covered these articles specifically. They were retained by the mortgagor, and were in his possession at the time of filing the petition in bankruptcy, and the mortgagee must be presumed to have retained his lien upon them, even if, as a matter of law, he had lost it as to his other securities. In re Reynolds (D. C.) 153 Fed. 295. The mortgagee was therefore entitled to the possession of the horses and other articles, and to have them sold upon a foreclosure of the chattel mortgage. The proceeds of the sale of these goods, amounting to $418.89, takes the place of the articles, as of the date of the filing of the petition.

As to the expense of the receiver for the care of these horses, amounting to $130, the question is somewhat more difficult. It is evident that, if the mortgagee had a valid lien, the withholding of the property by the receiver, supposedly for the benefit of the creditors, cannot be made to work a loss to the mortgagee. It is considered that the horses should have been viewed in the light of perishable property and disposed of at the most advantageous moment. In the meantime their keep was a legitimate expense of the receiver, payable out of the estate. It does not seem that the entire resulting loss can be charged to the mortgagee, who objected seasonably to the possession of the receiver, and who demanded immediate surrender of the horses to him.

It appears from the record in this proceeding that the mortgagee attempted to foreclose his chattel mortgage, and was prevented from so doing by the possession of the goods in the hands of the receiver. If the receiver could have obtained a revenue from the use of the horses, this revenue might have been used as a set-off; but, inasmuch as nothing of the kind occurred, the mortgagee could only be charged with such portion of the expense, for the care of the horses, as would necessarily have been incurred by him during the process of foreclosing his mortgage. Assuming that this could have been done within the period of 30 days, and that the receiver had the horses in his possession for three months, it is considered that $40 should be deducted to cover the mortgagee's share in the cost of the maintenance of the horses, and

155 F.—43

that the balance, viz., $90 should be paid by the trustee of the estate to the bankrupt.

The claim of the mortgagee, therefore, to the extent of $418.89, less $40, making a total of $378.89, is allowed, and the balance of the mortgagee's claim under the chattel mortgage is disallowed.

An order may be entered accordingly.