## PARKER *v.* ROLFE.

Opinion delivered January 19, 1925.

1. SALES—RESERVATION OF TITLE.—The sale and delivery of personal property, on condition that title is not to pass until payment of price, does not vest the title in the. vendee until the condition is performed.

2. SALES—CONDITIONAL SALE—INNOCENT PURCHASER.—Retention of title as security in a conditional sale is enforceable against a purchaser from the vendee, even though without notice.

3. PARTNERSHIP—CONDITIONAL SALE BY PARTNER.—Since a partner has no title to chattels owned by the firm, but only a right to share in the surplus after the partnership debts are paid, he cannot retain title to such property as security for the purchase price, and a sale by him to a third person transferred the title, notwithstanding such retention.

Appeal from Desha Circuit Court; *T. G. Parham,* Judge; reversed in part.

*Ross Mathis,* for appellant.

Appellee Rolfe failed entirely to show any title, or reservation of title in himself. The contract evidencing the sale of Campbell's interest in the machinery to Gray did not and could not reserve a title in Campbell. One partner cannot sell his interest in partnership property to the other, and retain title in himself. 17 A. L. R. 1421. The statute bar in replevin is three years. It was pleaded, and was a sufficient defense.

*Norfleet & Norfleet,* for appellees.

The effect of paragraph 9 of the contract between Campbell and Gray was to vest title in *all* of the property stated in the contract in Campbell, and it provides that the property shall be and remain in Campbell until all the notes are paid in full. The action was not barred, notwithstanding the three-year statute. C. & M. Digest, § 6950, includes replevin. Appellee's action accrued upon the wrongful detention after demand for delivery. 86 Ark. 58. A vendor's right to recover property, title to which has been retained until payment of purchase money, is not prejudiced by the sale or mortgage thereof

by the vendee. 108 Ark. 446; 101 Ark. 469. There was sufficient evidence to support the Rolfe judgment.

McCULLOUCH, C. J. This is an action at law instituted by appellees, E. A. Rolfe, Joe Campbell and Burt Gray, against appellant, F. W. Parker, to recover possession of a stationary engine and a lot of stave-mill machinery. Rolfe claims title to the engine and Campbell claims the other machinery involved in the action. Each of them bases his respective claim upon an alleged reservation of title in a conditional sale of the property. The causes of action are entirely separate, but no objection was raised below and none is raised here as to that feature of the case. Gray does not claim title to any of the property nor to any interest therein, and there is no reason why he should have been made a party; however, there is no objection raised on that score. Counsel for appellant frankly disregards all technical objections and asks that the case be determined on its merits. There was a trial before the court sitting as a jury, and the finding was in favor of each of the appellees, Rolfe and Campbell.

Appellees Campbell and Gray were copartners, engaged in the operation of a stave-mill, and, as such copartners, were the owners of the stave-mill machinery (other than the engine) involved in the controversy. They purchased from Rolfe the engine in controversy under a conditional contract of sale whereby the title was retained by Rolfe until the purchase price should be paid.

In the year 1918 Campbell sold out his interest in the copartnership to Gray, and retired from the firm. There was a written contract between Campbell and Gray, describing the partnership property covered by the contract, which consisted of a large quantity of staves and other manufactured timber on the yard, and also all of the mill machinery, fixtures, etc., described in detail, and a list of notes and accounts due to the copartnership. The contract recited a cash consideration of

$15,000, payable $4,500 cash in hand and the balance in seven unequal installments, evidenced by notes, the last of which was for the sum of $500. The contract contained a recital that "it is understood that the property herein conveyed shall be and remain in the said J. M. Campbell until all of the said notes are fully paid, including interest upon the same." The mill and other property were then situated at Cotton Plant, in Woodruff County, and afterwards Gray formed a partnership with appellant Parker, and the machinery in controversy and other remaining property of the old copartnership became the property of the new firm. It was moved to Louisiana and operated there for a time, and then brought back to Arkansas, and the mill was put in operation by Parker in Desha County, appellee Gray having passed out of the firm.

According to the testimony adduced, Gray made all the payments on his purchase from Campbell, except the last note for $500, which is still unpaid.

It is contended, in the first place, that the evidence is not sufficient to support a finding in favor of appellee Rolfe for the recovery of the engine. It must be conceded that the evidence is somewhat meagre, but we think it is sufficient to support the finding of the court. Rolfe did not testify himself, and the testimony on that branch of the case is confined to that of appellee Gray.

There seems to have been little stress laid in the trial below upon the question whether or not Rolfe had originally owned an interest, and sold it to Campbell or Gray, with reservation of title until the purchase price should be paid, but we think that the evidence is sufficient to establish these facts. Gray testified that the engine belonged to Rolfe, and that it had never been paid for. His testimony on this subject appears in the record as follows: "Q. The engine belongs to Judge Rolfe? A. Yes sir, I never did pay him for it. * * * Q. To whom did it belong? A. Mr. Rolfe. * * * Q. You told him (Parker) that Mr. Rolfe had a title to the engine? A. He knew it all the time. * * * Q. What

is the value of the engine that belongs to Judge Rolfe?
A. I promised to pay him $450 for it." Appellant
practically conceded his liability to Rolfe in the trial
below, for, in his examination, he made this statement:
"Well, somebody has got to pay Judge Rolfe, and I
suppose I will have to pay it. I didn't know it until I
was notified by him. No—come to think of it—I found
it out in Louisiana."

The evidence being sufficient to support the judg-
ment in Rolf's favor, and, there being no error in the
proceedings on that branch of the case, that judgment is
affirmed.

The case of appellee Campbell against appellant for
recovery of the machinery stands in a different attitude.
The question of conditional sales of personal property
by retention of title as security for the purchase money
has been the subject of many decisions of this court,
beginning with the case of *Carroll* v. *Wiggins*, 30 Ark.
402, and continuing down to the present time, including
the very recent case of *Brigham* v. *Thrailkill*, 166 Ark.
548, and we have steadily adhered to the rule that the sale
and delivery of personal property on condition that the
title is not to pass until payment of the purchase price,
does not vest the title in the vendee until the condition is
performed, and that the retention of title is enforceable
against the purchaser from a subsequent vendee, even
without notice. The substance of the rule and the theory
upon which it is based was well stated by Chief Justice
COCKRILL in *McIntosh* v. *Hill*, 47 Ark. 363, as follows:

"Possession of personal property is only *prima
facie* evidence of title, and the doctrine of *caveat emptor*
prevails notwithstanding the possession. The *prima
facie* title must yield to the actual title when it is asserted,
and the buyer who trusts to appearances must suffer the
loss if they prove delusive. If the vendor is estopped
from reclaiming his property from an innocent pur-
chaser, there is no principle, as was said in *Andrews* v.
*Cox, supra,* upon which we could stop, short of holding
that one who had borrowed or hired any personal prop-

erty might divest the true owner of his title, simply by
assuming the power to sell. We think that reason and
the overwhelming weight of authority pronounce in favor
of the right of the original vendor.''

In the case of *Simpson* v. *Shackleford,* 49 Ark. 63,
Judge BATTLE, speaking for the court, said:

''The transaction between Butcher and the appel-
lants was a conditioinal sale. No title to the mill passed
to him. Appellees only acquired the conditional title of
Butcher. The fact that Butcher was permitted to remain
in possession until sold did not estop appellants from
claiming and taking possession after appellees pur-
chased. They did not have a right to rely upon Butcher's
possession as conclusive evidence of his title, and to say
they were thereby induced to purchase. His possession
was only *prima facie* evidence of title, and they had no
right to treat and act upon it as higher evidence. To pro-
tect themselves it was necessary for them to inquire and
ascertain how Butcher held. When Butcher failed to
pay the purchase money at the time he agreed to, appel-
lants became entitled to the possession of the mill, even
in the hands of a *bona fide* purchaser, and to sue for and
recover it at any time during the period prescribed for
the bringing of such suits by the statute of limitations.''

Now, the theory upon which the vendee is permitted
to assert a superior claim over that of a purchaser from
his vendee is that the legal title was originally in the
vendor and never passed out of him. But this rule
necessarily implies that the legal title must be in the ven-
dor. Unless one has the title already, he cannot retain
it. The turning point in the present case therefore is
whether or not Campbell ever had legal title which he
could retain, subject to the condition of the final payment
of the purchase price. The evidence is undisputed that
the title to the property in controversy was in a copart-
nership composed of Campbell and Gray. Neither of the
partners had the legal title, but each owned an equity,
which was ''only the right to share in the surplus remain-
ing after the debts were paid and the partnership affairs

adjusted." *Ringo* v. *Wing,* 49 Ark. 457. It follows therefore that Campbell, having no legal title to the property in controversy, could not retain title as security for the purchase price. The contract between him and Gray was not either an acquisition or retention of the legal title, but merely constituted a sale and transfer of his equity in the partnership assets. This interest was extinguished by the sale to Gray, and the title held by the partnership became vested in Gray as the successor of the copartnership, and he had both the legal and equitable right to dispose of the property. The sale to Parker, or to the new firm composed of himself and Parker, constituted a transfer of title. The attempted reservation of title by Parker was ineffective, and the trial court erred in holding that he was entitled to recover possession.

The judgment in favor of appellee Campbell is therefore reversed, and his action dismissed.